# Kilgore & Son *v*. Shannon & Co.

## *Trover and Conversion.*

(Decided November 12, 1912.   60 South. 520.)

1. *Partnership; Actions Against; Parties.*—Where the complaint was against J. R. K. & Sons, a partnership composed of J. R. K. and J. K., claiming damages for a conversion by the defendant, the action was against the partnership and not against the individual members.

2. *Same; Sufficiency of Evidence.*—Where the action is for conversion against a partnership, a conversion by the partnership must be shown, and a conversion by one of the partners merely is insufficient.

3. *Same; Liability for Partner's Tort.*—A partnership is not liable for the tort of one of its members except when such tort is committed by such member while acting within the scope and prosecution of the partnership business.

4. *Same; Firm Property; What Constitutes.*—If a non trading partnership actually buys property with the firm's assets and for the firm's use, the property is the firm's property regardless of the general scope of the business.

5. *Evidence; Facts or Conclusions.*—Where the action was by a chattel mortgagee for the conversion of property covered by the mortgage, and the mortgagee testified that one of the partners told him that he bought the property from the mortgagor and that it was his understanding that the "defendant" got the property, this latter statement was not mere hearsay or opinion of the witness, but was some evidence that the partnership, which was the defendant, got the property.

6. *Same; Credibility of Witness.*—Where the action was for converting mortgaged property by purchasing it from the mortgagor and disposing of it, in weighing the testimony of the mortgagor and the partner, and a person aiding in the sale tending to show that such mortgagor did not sell such property to such partner, the jury was entitled to consider the fact that if such sale was made the parties engaged therein were guilty of a criminal offense.

7. *Appeal and Error; Motion for Non Suit; Denial.*—Where there was some evidence that the cattle were converted by the partnership and also evidence tending to show that the transaction was the individual transaction of the partners, the failure of the trial court to require plaintiff to show that the partnership was engaged in buying and selling cattle, was not reversible error; especially where the partners did not testify as to the nature of the partnership business, although sworn as witnesses, since, if they were not so engaged, this would have merely borne on the weight of the evidence.

[Kilgore & Son. v. Shannon & Co.]

8. *Same; Review; Questions of Fact.*—A judgment will not be reversed on the weight of the evidence where the trial court has refused a new trial on that ground, unless the appellate court is clearly convinced, after allowing all reasonable presumptions in favor of the correctness of the verdict, that it is wrong and unjust.

9. *Pleading; To-wit.*—The office in pleading of the phrase "to-wit" is to state time, place, number or manner which is not of the essence of the matter in controversy, so that the fact need not be proved strictly as alleged. But when used in pleading not for the purpose above set forth, its office is to particularize that which is too general in a preceding sentence, and render clear and of certain application that which might otherwise seem doubtful or obscure. Hence, the phrase "to-wit," when used in a complaint for the conversion of property to fix the date relieves a plaintiff from proving that it occurred on the particular date named, and permits him to prove that it occurred on or about said date.

10. *Words and Phrases; To-wit.*—When used elsewhere than in pleadings, the phrase "to-wit" is used to render clear certain and specific that which has preceded it, whether the matter referred to relates to place, time, manner, or an actual existing thing.

11. *Charge of Court; Misleading; To-wit.*—Where, by the use of the word "to-wit" in instructions in an action for conversion, the jury might be led to believe that unless the property was converted on the particular date specified there could be no recovery, such charge was properly·refused, notwithstanding these words were used in the complaint in the same connection.

12. *Trover; Chattel Mortgage; Evidence.*—Under the evidence in this case it was a question for the jury as to whether or not the defendant partnership converted the property claimed by the plaintiff under a mortgage executed to the plaintiff by another.

13. *Same; Complaint; Time.*—A complaint in trover should allege the time of conversion, and where the conversion is alleged as on a particular date not qualified by videlicet, a conversion on that day must be proved as laid, or the variance is fatal.

14. *Same; Demand; Necessity.*—Where neither the defendant nor anyone for him had possession of the property alleged to have been converted when the suit was brought, a demand for the property by the plaintiff was not a condition precedent.

APPEAL from Walker Law and Equity Court.

Heard before Hon. T. L. SOWELL.

Action by Shannon & Co. against J. R. Kilgore .& Son for conversion. Judgment for plaintiff, and defendant appeals. Affirmed.

· The summons was as follows: "You are hereby commanded to summons J. R. Kilgore & Son, a partnership composed of J. R. Kilgore and John Kilgore, to appear before the Walker county law and equity court, to be

held for said county at the place of holding same, then and there to answer, plead, or demur, within 30 days after the service of this process, to the complaint of Shannon & Co., composed of J. S. Shannon." The complaint is: "Shannon & Co., composed of J. S. Shannon, Plaintiff, against J. R. Kilgore & Son, a Partnership Composed of J. R. Kilgore and John Kilgore. Plaintiff claims of the defendant $200 damages for the conversion by the defendant on, to wit, the 15th day of September, 1901, of the following chattels, to wit: One yoke muley steers; one yoke white and brindle steers, known as the Shannon steers; and one cow, the property of the plaintiff."

BANKHEAD & BANKHEAD, for appellant. The suit is against the partnership, and the judgment against the partnership in the firm name binds only the partnership property.—*Baldridge v. Eason,* 99 Ala. 516. Those partners only are liable in respect to a tort who are privy to the tort.—*Williams v. Hendricks,* 115 Ala. 282. All cannot be found guilty on the same count without proof of a joint conversion by the several defendants.— *Powell v. Thompson,* 80 Ala. 51; *Larkins v. Eckworzel,* 42 Ala. 326. There is nothing in the record from which an inference can be drawn that the partnership participated in or was benefitted by the conversion.—38 Cyc. 2054. Hence, defendant was entitled to the affirmative charge. The complaint in trover should aver the time of the conversion, and the time alleged must be proven to a certainty with reasonable intent.—*Plott v. Robinson,* 39 South. 771; *Williams v. McKissack,* 125 Ala. 544; *Tallassee F. M. Co. v. First Nat. Bank,* 159 Ala. 315; *Mobile Co. v. Bay Shore L. Co.,* 158 Ala. 622. On these authorities charge 2 should have been given. See in this connection 19 Enc. P. & P. 254 and 256.

M. B. McCULLOUGH, W. C. DAVIS, and J. J. RAY, for appellee. No brief reached the Reporter.

PER CURIAM.—This suit was brought by the appellee against the appellant for damages for the conversion of certain steers, the property of the appellee. It appears from the evidence that one Sims gave a mortgage to the appellee upon the property described in the complaint, that the defendant is a partnership composed of J. R. Kilgore, frequently referred to in the testimony as "Bob" Kilgore, and John Kilgore; and that Bob Kilgore was the father of John Kilgore. It further appears from the evidence without dispute that Bob Kilgore was seen in possession of the steers described in the complaint after the above mortgage was executed, and that he shipped them out of Walker county, where the mortgage was recorded and where Sims resided, and that they were sold by him. The theory of the appellee is that Sims, who made him the mortgage on the cattle, sold the cattle to appellant, and that appellant sold them and retained the proceeds. The theory of appellant is that appellee took possession of the steers under the mortgage, and that Bob Kilgore, one of the members of the firm of J. R. Kilgore & Son, bought the cattle from appellee. On the subject as to whether Bob Kilgore bought the cattle from appellee the evidence is in sharp dispute. The appellee swore positively that he did not sell the animals to Bob Kilgore. On the other hand, Bob Kilgore swore positively that he bought the animals from the appellee, and on this subject he was corroborated by the mortgagor, Sims. There was evidence in the case, however, tending to impeach the witness Sims.

1. The summons and the complaint in this case are both short, and the reporter will set them out in his summary of the facts.

2. A casual inspection of the complaint will indicate that the appellee (plaintiff in the court below) brought this suit against the partnership of J. R. Kigore & Son (the defendant in the court below), and not against J. R. Kilgore and John Kilgore, the individuals composing the partnership. The complaint in the instant case is more plainly a declaration against the partnership only than was the case in *Williams et al. v. Hurley et al.,* 135 Ala. 319, 33 South. 159. In that case the Supreme Court, through MCCLELLAN, C. J., said: "The complaint counts against the partnership alone, and not against the individuals composing the partnership. The statement of the members of the firm is mere description of the personnel of the entity which alone is sued." To the same effect is the case of *Baldridge v. Eason,* 99 Ala. 516, 13 South. 74.

3. As this suit was brought by appellee against the appellant, a partnership, for damages for an alleged conversion by the appellant of personal property of the appellee, as a condition precedent to a right to recover in the action, the law cast the burden upon the appellee of introducing evidence sufficient to reasonably satisfy the jury that appellant—the partnership of J. R. Kilgore & Son—converted the property described in the complaint. Evidence merely establishing the conversion of the property by a person who at the time of the conversion was a member of the partnership was not alone sufficient to bind the partnership and to authorize a recovery by appellee against appellant. The mere fact that a man who is a member of a partnership commits a tort is not alone sufficient to justify the conclusion that the partnership of which he is a member is also guilty of the tort. The general rule is that a partnership is liable for the tort of one of its members only when the tort is committed by such member when act-

ing within the scope and prosecution of the partnership business.—*Williams v. Hendricks*, 115 Ala. 282, 22 South. 439, 41 L. R. A. 650, 67 Am. St. Rep. 32; *Myers v. Gilbert*, 18 Ala. 467.

4. There was undoubtedly evidence in this case tending to show that J. R. Kilgore, one of the members of the partnership, converted the property described in the complaint. One of the principal questions presented by this record is whether there was any evidence tending to show that the conversion by Bob Kilgore was a conversion committed by him while acting within the scope and prosecution of the partnership business. The appellee is evidently a merchant who did business as such at the time of the alleged conversion at Carbon Hill, which is a town in Walker county, and he testified that he was engaged in the business of buying, selling, and dealing in cattle in that county. It is evident from the bill of exceptions that the firm of J. R. Kilgore & Son also did business in the neighborhood of that town at the time referred to, and that the members of that firm were known to the appellee. In other words, the parties to this litigation were not residents of a large city, but were residents of a county in which there is no large city, and they evidently knew each other, and the jury were authorized to infer from their situation with reference to each other that the appellee and the members of the firm of Kilgore & Son were probably acquainted with the general scope and character of each other's business. While the appellee in his testimony details a conversation which he had with Bob Kilgore, and states that Bob Kilgore in said conversation stated that he bought the cattle from Sims, and nowhere states that Bob Kilgore stated that the cattle were bought for J. R. Kilgore & Son, nevertheless the appellee also states in his testimony: *"It is my understanding that the*

*defendant got these steers."* The word "defendant"
used by the witness in the sentence which we have just
quoted and italicized refers, not to Bob Kilgore, but to
the firm of Kilgore & Son, the defendant in the court
below.

In the case of *Dearing, Sink & Co. v. Smith & Wright,*
4 Ala. 432, the plaintiff's counsel testified that "he had
always understood that Dearing, Sink & Co. were part-
ners, but did not know whether there had been a dis-
solution of the firm. Mr. Dearing, *he had understood,*
was a partner." In that case the Supreme Court said:
"It is, however, argued that the witness does not testify
of his own knowledge that James H. Dearing was a
partner of the house of Dearing, Sink & Co., but merely
from general reputation or rumor. We do not so regard
his evidence. He says, 'He understood,' etc. Now 'un-
derstood' is the preterit of 'understand,' a verb of very
extensive signification, and which, among other things,
means to learn, or to be informed. When the witness
says, in effect, that he has learned or been informed that
Mr. Dearing was a member of the firm, it cannot with
propriety be assumed that his information was derived
from rumor, but a jury might well infer that he had
learned it from an authentic and satisfactory source,
even from the party himself; and upon the authority of
the cases cited, the court would be bound to so intend."
While there is no direct statement of any witness in this
case that the partnership of Kilgore & Son was engaged
in buying and selling cattle, nevertheless as appellee evi-
dently knew the members of the partnership, and as it
is a matter of common knowledge that people who re-
side in rural communities and small towns usually
know, not from mere rumor, but from authentic infor-
mation, derived from constant association, who are the
members of the various partnerships domiciled and do-

ing business in such towns and communities, and what the scope of such business partnerships is, we are of the opinion that the statement of appellee in his testimony that he understood that J. R. Kilgore & Son got the steers in controversy amounted not simply to the opinion of the witness or to mere hearsay, but to some evidence of that fact. Of course, if that is true, it was for the jury to say what weight should be given to this testimony.—*C. of G. Ry. Co. v. Dothan Mule Co.*, 159 Ala. 225, 49 South. 243; 6 Mayfield's Dig. p. 340, § 107.

In addition to the above, the evidence for the defendant tends to show that at or about the time of the alleged conversion of the steers, and at or about the time Bob Kilgore was admittedly in possession of the steers, some cattle were bought, as the witness Bob Kilgore testified, by Bob Kilgore from Sims. The evidence of Bob Kilgore tends to show that the cattle so bought from Sims did not include the steers in controversy, but it is evident, from all of the testimony of the defendant, that Sims sold either to Bob Kilgore or to the defendant a lot of cattle at or about the time of the alleged conversion, and that at the time of such sale Sims, Rollins, and Fondran were in possession of the cattle so sold. There was evidence also tending to show that at or about that time Sims, Rollins, and Fondran took the steers in controversy from the possesion of one Cheatham, who had possession of them for Sims, and carried them off, and, while the witness Sims testifies that he never sold Bob Kilgore or the defendant the steers in controversy, he does testify as follows: "I sold Kilgore & Son a lot of yearlings, but I do not remember how many, five or six I think in all. I sold him, I think, three or four muley cows and four or five yearlings. I sold him one oxen, a little bit of a fellow, that I got from Nix up

there—about the size of a good-sized milk cow. That was the only ox in the bunch."

It was for the jury to say, in arriving at their conclusions from the disputed evidence in this case, whether the cattle above referred to by Sims in his quoted testimony—and the quoted testimony evidently refers to the same lot of cattle—actually included the steers in controversy, although the witness Sims and another witness claimed that they were not included in the lot. If Bob Kilgore bought the steers from appellee, then the appellee was plainly not entitled to recover. If, however, he bought them from Sims, then the jury were authorized to infer that they were in the bunch of cattle sold by Sims when Rollins and Fondran were present. If the steers in controversy were included in that lot of cattle, then certainly there was evidence that the defendant bought the cattle, because the witness Sims expressly said that he sold a lot of cattle to Kilgore & Son. If Sims sold the steers to J. R. Kilgore & Son—the partnership—then the appellee was entitled to recover, although the partnership of J. R. Kilgore & Son may not have been engaged in the cattle business. A firm of physicians might buy an automobile for the use of the firm in its practice of medicine, and if so, the automobile so purchased would be the property of the firm, and a part of the firm's assets. A law firm with a country practice might buy a horse and buggy for the use of the partnership, and it would form a part of the firm's assets.

In other words, if a nontrading partnership actually buys property with the firm's assets and for the firm's use, then such property is the firm's property, regardless of the question as to the general scope of the partnership's business.

35 CA

5. For the above reasons, we are of the opinion that the trial court committed no error in refusing to give the general charge which was requested in writing by the defendant in its behalf.

6. It seems apparent to us that out of the conflicting evidence in this case the jury were authorized to come to the following conclusions as to the truth of this matter:

First. That at the time of the alleged conversion Bob Kilgore was in possession of the steers in controversy, and that he carried them away and sold them.

Second. That Bob Kilgore did not obtain the steers from appellee, and that he bought them and carried them away and sold them without the knowledge or consent of appellee.

Third. That at the time Bob Kilgore had knowledge of the fact that appellee held a mortgage on the steers made to him by the witness Sims.

Fourth. That at or about the time of the alleged conversion Sims, Rollins, and Fondran took the steers from Cheatham, who had possession of them for Sims.

Fifth. That Sims, while Rollins and Fondran were present and at or about the time of the alleged conversion, sold a lot of cattle to "J. R. Kilgore & Son."

Sixth. That the steers came into Bob Kilgore's possession when "J. R. Kilgore & Son" bought the cattle from Sims when Rollins and Fondran were present.

If Bob Kilgore did not buy the cattle from appellee, then he could only have come into possession of them through Sims, and, if he came into their possession through Sims, then the jury had a right to infer that he came into their possession when Sims sold "J. R. Kilgore & Son" the bunch of cattle above referred to. It is true that Sims swears positively that they were not in that lot of cattle, but he also swears that he never

did sell the steers to any one, but that appellee sold
them to J. A. Kilgore. In this testimony Sims is cor-
roborated by the witness Rollins and by J. R. Kilgore.
The admitted fact remains, however, that Bob Kilgore
was in possession of the steers and sold them, and, if he
did not buy them from appellee, the jury had a right
to infer, as above stated, that he obtained them when
J. R. Kilgore & Son bought the cattle above referred to
from Sims.

It is to be remembered in weighing the testimony of
Sims as to the sale of the steers that he may have been
guilty—if he sold the steers—of a violation of the crim-
inal law; that Rollins, who aided him in the sale, if
in fact he did aid him, may also have been guilty of a
criminal offense; and that Bob Kilgore, if he bought the
steers for himself or for his firm from Sims, may, under
some of the tendencies of the evidence, have also been
guilty of a crime. In other words, the good faith of
Bob Kilgore, Rollins, and Sims in and about the sale
of the steers—if Sims sold them—was before the jury,
and was to be considered by the jury in passing on the
question as to what, if any, part of the evidence of
either of these witnesses should be accepted as the truth.
We think that the circumstance that Bob Kilgore was
certainly in possession of the steers, coupled with his
claim that he bought them from appellee—which claim
the verdict of the jury clearly shows that they did not
accept as true—might well have caused the jury to find
that he came into their possession when Sims sold the
cattle to "J. R. Kilgore & Son." In other words, the
jury might well have found—as we think, in fact, they
did find—that Sims swore truthfully when he testified
that he sold a lot of cattle to J. R. Kilgore & Son, but
that he diverged from the truth and testified falsely

when he said that the steers in controversy were not in the lot of cattle so sold.

7. The appellant undoubtedly, by a motion when the appellee closed his case, called the attention, in an appropriate way, of the trial court to the situation of the evidence as to the scope of the business of the partnership of J. R. Kilgore & Son, and as all of the witnesses who testified in the case were so situated that they must have known whether J. R. Kilgore & Son was, in fact, a partnership engaged in buying and selling cattle, the trial judge might well have required the appellee, by a few questions directed to some of the witnesses who must have known this fact, to have given the jury full information on that subject. On the other hand, as appellee offered at least some evidence—the weight of which was for the jury—tending to show that J. R. Kilgore & Son were guilty of the conversion and as both Bob Kilgore and John Kilgore testified as witnesses, and as the appellant, by a few well-directed questions, could have brought out the fact, if indeed, it was a fact, that J. R. Kilgore & Son was not a partnership engaged in buying and selling cattle and did not do so, we are not disposed to conclude that, by the failure to ask such questions and elicit such testimony, if it existed, the appellant has suffered an injury. Having elicited from the trial court at the conclusion of appellee's testimony that there was, in the opinion of the court, some evidence tending to show that appellant was guilty of the conversion, the appellant by a few well-directed questions could have proven that J. R. Kilgore & Son was not engaged in the cattle business, if it was not, and thus have set at rest that inquiry, and, as appellant failed to do so, we are not disposed to disturb the verdict of the jury because of a lack of fulness of the evi-

dence on the subject.—*Dearing, Sink & Co. v. Smith & Wright, supra.*

The burden was upon appellee to show by evidence, to the reasonable satisfaction of the jury, that the appellant had converted the cattle. When he offered some evidence of that fact, the jury, and not the court, was the forum to determine its sufficiency. If the appellant was not engaged in buying and selling cattle, that fact would probably have been of material service to the jury in settling the issues presented to them. The appellant, although it plainly could have done so, offered no evidence upon the subject, and, as above stated, we do not think that the verdict of the jury should be disturbed because of the condition of the evidence as to that matter. We are not prepared to say that in rendering a verdict for the appellee the jury did the appellant a palpable wrong.

Only when, after allowing all reasonable presumptions in favor of the verdict's correctness, the court is clearly convinced that it is wrong and unjust, is an appellate court authorized to put the trial court in error for refusing to grant a motion for a new trial based upon such grounds.—*Cobb v. Malone,* 92 Ala. 630, 9 South. 738; *B'ham Ry. & E. Co. v. Mason,* 144 Ala. 387, 39 South. 590, 6 Ann. Cas. 929; *M. & O. R. R. Co. v. Barber,* 2 Ala. App. 507, 56 South. 858.

8. We have frequently referred to the fact that the true meaning of a word can only be determined by the context. The phrase "to wit," as used in legal documents, is a phrase which is illustrative of the above truism. In pleading its office is to state time, place, numbers, or manner, which are not of the essence of the matter in issue, so that they may not be proved strictly as laid.—*Brown v. Berry,* 47 Ill. 175; *State v. Heck,* 23 Minn. 549; *Sullivan v. State,* 67 Miss. 346, 7 South. 275;

8 Words and Phrases, 6992. When not used in pleading for the above purpose, the general office of the phrase "to wit" seems to be "to particularize what is too general in a preceding sentence, and render clear, and of certain application, what might seem otherwise doubtful or obscure; words used to call attention to a more particular specification of what has preceded."—38 Cyc. pp. 591, 592. In pleading, except when used to designate time, place, numbers, or manner, the above definition quoted from 38 Cyc. seems to be the appropriate office of the phrase.

When used other than in pleading, the universal meaning accorded to the phrase seems to be "to render clear, certain, and sure" that which has preceded its use, whether the matter referred to be one of place, time, manner, or an actual existing thing.

The phrase "to wit," as used in the complaint in this case, was used by the appellee for the purpose of informing his adversary that he did not intend in making his proof as to the time of the alleged conversion to be held strictly to the day named in the complaint as the day on which the conversion took place, but that the conversion occurred on or about that day, and the phrase was effective for that purpose.—8 Words and Phrases, supra.

The charge of a court to a jury is not pleading, and words which when used in pleading may have a well-defined meaning if used by a court in giving a case in charge to a jury may well be received by the jury as meaning an entirely different thing, and the jury may thereby be misled as to the true meaning of the court. The words "to wit" as used in charge 2, which the appellant requested the court in writing to give to the jury, might have been received by them in the popular sense of that

phrase, which is "namely," and led them to believe that unless the oxen were actually received by Kilgore on September 13, 1910, they should find for the appellant, although that was not the law of this case.—*Commonwealth v. John Quinlan,* 153 Mass. 483, 27 N. E. 8; *Clark v. Employes Liability Assurance Co.,* 72 Vt. 458, 48 Atl. 639. The proposition is familiar that a trial court will not be put in error for refusing to give to the jury a charge which is calculated to mislead the jury.—*B. R. L. & P. Co. v. Moore,* 148 Ala. 115, 42 South. 1024; 6 Mayfield's Dig. p. 112, §§ 182, 183, and authorities cited.

9. A complaint in trover which fails to allege the time of the conversion is demurrable because of the absence of such averment.—*Tallassee Falls Mfg. Co. v. First Nat. Bank,* 159 Ala. 315, 49 South. 246.

When the conversion is alleged in the complaint to have occurred on a specific day not qualified by a videlicit, the evidence must reasonably satisfy the jury that the conversion occurred on the specific day named or the variance is fatal.—*Williams v. McKissack,* 125 Ala. 544, 27 South. 922; *Mobile, J. & K. C. R. R. Co. v. Bay Shore Lumber Co.,* 158 Ala. 622, 48 South. 377.

In the present case the time of the conversion was stated under a videlicit, and the trial judge properly charged the jury that the appellee was not strictly confined in making his proof of the day to the 13th day of September, but that the evidence must reasonably satisfy them that the conversion occurred on or about that day.—*Blair v. Riddle,* 3 Ala. App. 292, 57 South. 382; *Corona Coal & Iron Co. v. Bryan,* 171 Ala. 86, 54 South. 522.

10. In this case there was no controversy about the fact that the property had been disposed of by either Bob Kilgore or appellant before the bringing of the

suit. Neither member of the firm of J. R. Kilgore & Son was in possession of the property, and no one for the appellant was in possession of the property, when the suit was brought. Under the facts of this case, there was no necessity for a demand of the property as a condition precedent to bringing the suit.—*Jesse French Co. v. Johnson*, 142 Ala. 419, 37 South. 924; 6 Mayfield's Dig. p. 895, § 26.

We find no error in the record, and the judgment of the court below is affirmed.

Affirmed.

NOTE.—The foregoing opinion was prepared by Judge DE GRAFFENRIED, while he was a judge of this court, and is adopted by the court.