# Republic Iron & Steel Co. v. Quinton.

*Injury to Servant.*

(Decided July 2, 1915. 69 South. 604.)

1. *Master and Servant; Injury to Servant; Scope of Employment.*— Where an employee gratuitously, and without proper authorization, undertook to aid in work outside of his regular employment, and while so doing, was killed, the employer was not liable for his death.

2. *Same.*—Where a superintendent or boss, having control of the employees, tacitly accepts the service of an employee, foreign to the employee's regular work, the service was authorized in a legal sense, and the employee was within the protection of the law, protecting employees against the negligence of the master.

3. *Same; Instruction.*—A charge asserting that the master was not liable unless the boss actually ordered the employee to do the work

in the doing of which he was injured, was misleading under the facts in this case.

4. *Same; Evidence.*—Where an employee in a mine was killed while aiding in the work outside of his regular employment under the control of the boss driver, both the boss driver and the employee being subject to the orders of the bank boss, evidence that the bank boss ordered the employee in the work, was relevant on the issue as to the authority of the employee to do the work in such sense as to bring him within the protection of the law making the employer liable for the negligence.

5. *Same.*—Where the boss driver was directing the work in a mine and had control of the employee, and both the boss driver and the employee were subject to the orders of the bank boss, and the bank boss, addressing every one standing around, said, "Come ahead, and let's clean up the wreck, and get the cars running," and the boss driver was present at the time, the question whether the boss driver was thereby authorized to order the employee to aid in the work, though outside of his regular employment, so as to make the employer liable for any negligence, was a question for the jury.

6. *Appeal and Error; Assignment; Insistence.*—Where the appellant stated in brief, "It is submitted that the charge was proper under the plea, and should have been given," such was not an insistence on the ground of error for refusal to give the charge as to require this court to review the assignment on appeal.

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Action by Julia Quinton, as administratrix, against the Republic Iron & Steel Company. From a judgment for plaintiff, defendant appeals. Affirmed.

The complaint alleges that plaintiff's intestate was killed, while serving defendant company in the line of his employment, by contact with a current of electricity, which was proximately caused by the negligence of defendant's superintendent, Lang, while exercising his superintendence, in that said Lang negligently caused the intestate to come in contact with said current of electricity.

A "trip" wreck in the mine was being repaired by several workmen under the supervision of Lang, who was bank boss and had general control of everything inside of the mine. The men were resetting the timbers, one of which was about to catch on the electric wire

which supplied the mine with light and power, and which was then sagging from the room along which it ran; and the intestate, who was present, reached up and pushed the wire aside. It held him fast, and he was shocked to death before the current could be switched off.

Intestate was assistant boss driver, and was working under Boss Driver Vandiver. In repairing the wreck, the work was usually done by the timber and battrice man. On this occasion intestate's superior, Lively, was standing within 15 or 20 feet of the workmen, and ordered intestate and one Nicholas to remain there and assist with the job, and afterwards to report to him. The testimony is in direct conflict as to whether Lang knew of intestate's presence before he moved to push the wire, and whether he ordered intestate individually, or generally, along with the gang, to assist in the work. Nicholas assisted actively in the work, and according to one or more witnesses intestate was assisting with the timbers before he pushed the wire.

The following charges were refused to defendant: (9) The court charges the jury that if you are reasonably satisfied from the testimony that Mr. Lang did not order or direct plaintiff's intestate to assist in doing the work which was being done, but plaintiff's intestate of his own accord put up his hand to shove the wire out of the way, and received his injuries while doing so, then plaintiff will not be entitled to recover.

(12) If you are reasonably satisfied from the testimony that plaintiff's intestate was guilty of the slightest negligence in putting his hand upon the electric wire, and this proximately caused his death, then plaintiff cannot recover.

(A) If you believe the evidence, you cannot find that Vandiver had any authority to issue orders to plaintiff's intestate to assist in doing the work of resetting the tim-

bers; and if the intestate had no authority in any other way, or instructions from any other superior employee to engage in such work, then plaintiff cannot recover.

(B) If you believe the evidence, Vandiver had no authority to bind defendant by the issuance of instructions, if any were so issued, to intestate to assist in resetting the timber.

PERCY, BENNERS & BURR, for appellant.

W. A. DENSON, for appellee.

SOMERVILLE, J.— (1) The chief question in controversy in this case is whether or not the intestate was killed while engaged in a service to the defendant which he was employed or authorized to perform. The undisputed evidence shows that his regular employment was in the capacity of assistant boss driver, and it follows, of course, that if he gratuitously, or without proper authorization, undertook to aid in the work of repairing the wreck, and in so doing handled the electric wire which shocked and killed him, he is not entitled to recover on this complaint.

(2) The intestate was working immediately under the boss driver, Vandiver, and subject to his orders. But all of the men employed inside of the mine, including Vandiver and the intestate, were subordinate to the bank boss, Lang, and subject to his orders and control. Vandiver, who knew of this wreck, and who was present while Lang was superintending the work of repair, instructed the intestate to remain there and assist in the work.

Some of the testimony indicates that he was there for several minutes, and that he had hold of some of the timbers before he handled the wire. It was open to the jury to reasonably infer either that Lang heard Vandiver

order the intestate to remain and assist, or else that he knew he was present and engaged in assisting, and hence that Lang tacitly assented thereto; and they might have so found in spite of Lang's denial of such knowledge.

It is obvious that, if Lang tacitly accepted the service of the intestate in this behalf, though it was foreign to his regular employment, such service was authorized in a legal sense, and the intestate was thereby brought within the protection of those rules of law which shelter servants against the negligence of their master.

(3) Charge 9 is at least misleading, in that the jury might have inferred from its language that the intestate was not properly serving, unless he was actually ordered by Lang to do the work he undertook to do on the occasion in question. We think it was for this reason properly refused.

(4) While Vandiver, as boss driver, cannot be presumed to have had any right to order the intestate to take part in the work of repairing a wreck, which was a distinct branch of the mining service, and outside the scope of Vandiver's employment and authority, nevertheless it may very well be presumed that he had authority to suspend him from his regular employment and place him under the orders of their common superior for any particular service for which he might be needed, and as to which the superior might command or accept his service.

For this reason Vandiver's order to the intestate to remain and help was relevant upon the issue of the latter's authority to do the work in question; but, standing alone, it was not sufficient authority. It appears that Vandiver had charge of, and that the intestate was employed in, a particular branch of the service, and it does not appear that either had any duty or authority what-

ever with respect to this work which was wholly separate and apart from his regular employment. As declared by this court: "If any employee quits the work assigned to him by his employer, and voluntarily undertakes to do work about which he had no duties to perform by virtue of the contractual relation existing between him and his employer, then while such condition exists the duty growing out of that relation of using care for his safety does not rest on the employer."— *Southern Ry. Co. v. Guyton,* 122 Ala. 231, 240, 25 South. 34, 37.

And again: "The injury must be received while rendering the service required by the particular employment, or in obeying the orders of a superior, to which the employee is bound to conform. Injury received while doing other more hazardous service not pertaining to the employment, by way of accommodation, or self-assumed, is not sufficient."—*G. P. R. Co. v. Propst,* 85 Ala. 203, 4 South. 711.

And the general rule is well settled that: "Where the injury is sustained while the servant is acting without the scope of his regular employment, at the command or request of another servant, the master is not liable, unless the latter servant is, either expressly or impliedly, authorized to make the command or request."—26 Cyc. 1089, 1090, and cases cited.

It results from these principles, when applied to the undisputed facts of this case, that unless the bank boss, Lang, ordered the intestate to perform the service he was rendering at the time he was killed, or impliedly authorized it by knowingly accepting the service, the plaintiff is not entitled to recover in this action.

It was the manifest purpose of charges A and B, and they are aptly framed for this purpose, to limit the jury to the words or conduct of Lang as the only source of

the intestate's authority for rendering the service in question, as to which the evidence was in sharp conflict. We think that these charges are correct statements of the law applicable to the facts in evidence, and that their refusal was prejudicial error.

Charge 12 ought to have been given, if there was any tendency of the evidence to support any of the pleas of contributory negligence. We presume it was refused on the theory that those pleas were without such support. We pretermit consideration of this question, as the evidence on this issue may be different on the next trial.

For the error pointed out, the judgment will be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, S. J., and MAYFIELD and GARDNER, JJ., concur.

## ON REHEARING.

SOMERVILLE, J.—(5) In the foregoing opinion it was held that the boss driver, Vandiver, had no authority, by virtue of his employment, to order the intestate to assist in resetting timbers at the place of the wreck, which work was then under the personal direction of Bank Boss Lang; and hence that refused charges A and B should have been given as requested by defendant.

It is nevertheless insisted for the appellee that the testimony of Vandiver makes it a question for the jury to determine whether Vandiver, who was present at the time Lang said, addressing everybody standing around, "Come ahead, and let's clean up the wreck and get the cars running," was not thereby authorized to order his subordinate and assistant, the intestate, to remain and assist in the work in hand. Upon a thoroughly consid-

eration of the whole evidence, the court in full bench is impelled to adopt that view, and also the resulting conclusion that, as applied to the evidence, charges A and B were at least misleading, and therefore properly refused. Refused charge 9 is subject to the same criticism, for the same reason.

(6) Refused charge 12 was an instruction to the jury that if they "were reasonably satisfied from the testimony that plaintiff's intestate was guilty of the slightest negligence in putting his hand upon the electric wires, and this proximately caused his death, then plaintiff cannot recover." The only allusion to this charge in the brief of counsel for appellant is: "It is submitted that this charge was proper under the plea alleging contributory negligence, and should have been given."

This does not "reach the dignity of an insistence upon the grounds of error covering it" (*W. U. T. Co. v. Benson,* 159 Ala. 254, 264, 273, 48 South. 712), and hence this assignment must be disregarded.

It results that the application for rehearing will be granted, the judgment of reversal heretofore rendered will be set aside, and the judgment of the city court will be affirmed.

Affirmed. All the Justices concur.

McClellan and Thomas, JJ., are of the opinion that the court cannot be put in error for refusing charge 12, refused to defendant for these reasons: (a) That the proposed instruction was calculated to mislead the jury to the conclusion that the negligence of the intestate might have alone resulted from putting his hand on the wire, notwithstanding the intestate might, in due prudence, have been entirely ignorant of the fact that the wire was dangerous; (b) that it was reasonably susceptible of the interpretation that negligence, at least in a

slight degree, on the part of intestate, was predicable of the mere act of putting his hand on the wire; (c) that it was not as broad as the issues tendered by the pleas of contributory negligence in this; that the contributory negligence pleaded comprehended elements additional to the mere. fact or act of intestate's putting his hand on the wire. The proposed instruction should have defined the contributory negligence relied on therein to defeat a recovery.