153 So. 650

## LACEY v. DEATON.

6 Div. 519.

Supreme Court of Alabama.

March 22, 1934.

Fred G. Koenig, of Birmingham, for appellee.

G. P. Benton, of Fairfield, for appellant.

THOMAS, Justice.

The suit was for personal injuries caused by the falling of plastering on plaintiff—the tenant—from the ceiling of a rented house belonging to defendant. Plaintiff charged that the defective and unsafe condition was not known to her, was not obvious; that it was concealed and not to be discovered by the exercise of ordinary care.

The verdict and judgment went for plaintiff.

It is the general rule, that while a landlord does not impliedly warrant the safety of the premises, or that they are fit for the purpose for which they are rented, if he conceals or fails to disclose to the tenant dangerous defects known to him, when the

circumstances impose the duty to disclose, and when such defects are not known to the tenant and not discoverable by reasonable examination by such tenant, the former is liable for injuries caused and suffered by reason thereof by the tenant. Smith v. Hallock, 210 Ala. 529, 98 So. 781; Scoggins v. Atlantic & G. P. Cement Co., 179 Ala. 213, 223, 60 So. 175; Anderson v. Robinson, 182 Ala. 615, 62 So. 512, 47 L. R. A. (N. S.) 330, Ann. Cas. 1915D, 829; Morgan v. Sheppard, 156 Ala. 403, 47 So. 147; Adler v. Miller, 218 Ala. 674, 120 So. 153; Gulf Electric Co. v. Fried, 218 Ala. 684, 691, 119 So. 685, and authorities.

In this case there was evidence, or reasonable inferences therefrom, of an agreement to repair which entered into the contract of renting. Adler v. Miller, supra; Gulf Electric Co. v. Fried, supra; Smith v. Hallock, supra; Macke v. Sutterer, 224 Ala. 681, 141 So. 651; Morgan v. Sheppard, 156 Ala. 403, 47 So. 147. Of this the plaintiff said:

"Mr. Lacey came back to the house after I looked at this house and asked which of the three houses I wanted and I told him that number 329 was the size house I wanted and he said he would repair it if I rented it. He said he would tear all the old plastering and paper out and repaper and replaster the whole house throughout and would put in a bath tub if I rented it, and he wanted to charge twenty-five dollars but I told him I would not pay but twenty and I rented it from him for twenty dollars after it was fixed. I did not go back to the house while it was being repaired—I did not go back any more. I moved in there later on the 28th of October. When I went in there the room in which I was later injured had pretty paper on it, as smooth as it could be. I did not see anything out of the ordinary in the ceiling when I moved in there."

This was positively denied by the defendant, saying:

"She wanted the door casings—the doors had been painted a dark color and the door casings, and I told her I had gone to so much expense I didn't like to go to more, but she said that it did not harmonize with the paper and the paper looked nice and light and she would rather have it done and if I would furnish the paint that she had a boy who was a painter and he would paint it and I told her I would do it and she also wanted the bath tub fixed and I agreed to do that. I did not tell her at any time before she moved in the house that I would replaster the whole house. I did not tell her I would replaster the room where she got hurt. I did not replaster any of the house. I did not repaper any of the house for her at that time. * * * We papered the hall and four rooms and it is my best recollection that the two ceilings on the right we did not paper and one was in the room where the plastering fell. I know the ceiling in that room was not papered. I know the plastering in that room had not been touched about that time. I mean for her, just prior to the time she moved in. I did not agree with Mrs. Deaton on or about the 15th of October if she would rent the house that I would remove the plastering from all the walls and the ceilings of all the rooms and replaster all the walls and repaper them. I did not make such an agreement with her. I did not say anything to her at all about replastering the house, as an inducement to get her to move in there. I examined the plastering and the walls in this room where she claims she got hurt before she moved in there, and found it in good condition. I could not see anything wrong with it. The ceiling seemed to be perfect; it might have been soiled the least bit but not enough to repaper it. It is not true that the plastering had fallen off in the ceiling in this particular room just before Mrs. Deaton rented the house. The ceiling was in good condition."

The rule is thus stated by Mr. Chief Justice Anderson in Morgan v. Sheppard, 156 Ala. 403, 408, 409, 47 So. 147, 148, as follows:

"When, however, the premises are out of repair at the time of letting, in particulars which the landlord is bound as regards third persons not to allow, the landlord is liable for injuries sustained by a third person from such want of repair. The reason for the rule seems to be that in such a case the dangerous condition of the premises constitutes a nuisance, and the liability of the landlord results from his leasing premises upon which a nuisance exists. * * *

"The rule, however, of the liability of the landlord for renting premises in such a dangerous condition as to constitute a nuisance, does not exist in favor of the tenant, his servants, guests, or others entering under his title. * * * As to them, in the absence of covenant to repair, he is only liable for injuries resulting from latent defects, known to him at the time of the leasing, and which he conceals from the tenant. 24 Cyc. 1114, and cases cited in note 50; Thomp. on Neg. §§ 1130, 1131. If the defect is obvious at the time of the letting, the tenant takes the possession of premises as he found them, and the landlord would not be liable for injuries re-

sulting from said obvious defects to the tenant, his family, servants, or guests. Sunasack v. Morey, 196 Ill. 570, 63 N. E. 1039; 18 Am. & Eng. Ency. of Law (2d Ed.) p. 224; 2 Wood on Landlord & Tenant, § 381; Anderson v. Hayes, 101 Wis. 538, 77 N.W. 891, 70 Am. St. Rep. 930; Coke v. Gutkese, 80 Ky. 598, 44 Am. Rep. 499; Kern v. Myll, 80 Mich. 525, 45 N. W. 587, 8 L. R. A. 682. In order, therefore, for the complaint to show a breach of duty on the part of the landlord to a tenant, or his servants or guests, the defects causing the injury must have been latent or concealed, and not disclosed by the landlord to the tenant."

In Adler v. Miller, 218 Ala. 674, 680, 681, 120 So. 153, 158, it is observed:

"In Anderson v. Robinson, 182 Ala. 615, 62 So. 512, 47 L. R. A. (N. S.) 330, Ann. Cas. 1915D, 829, the rule of an action in tort touching 'concealed defects' and 'agreements to repair,' as affecting the contracting tenant, is stated, and the observation is made:

" 'In the case at bar, however, some of the counts set up a covenant to repair when the lease was made and as a part of the consideration of same; but it seems from the great weight of authority that said covenant does not increase the liability of the landlord, or change the rule above set forth as to his liability in tort to the tenant, his family, servants, or guests, for injuries caused by virtue of defects in the rented premises. In other words, it seems settled by the weight of authority that the landlord is not liable in tort for injuries to said class, whether there be a covenant to repair or not, unless the defects existed at the time of the letting, were known to him, and which he concealed from the tenant.' * * *

"And the just and humane rule announced in Hart v. Coleman, 201 Ala. 345, 78 So. 201, L. R. A. 1918E, 213, declared or extended the right of action ex contractu in such a case to the tenant as affected by the obvious defect against which the tenant contracted for his own security."

■■ The issues of fact were for the jury—as to whether the defect insisted upon was known to the landlord and not known to the tenant, and not disclosed by the landlord to the tenant; whether there was a promise to replaster, the failure of compliance with that agreement, and whether or not the repairs were done before the lease was entered upon per the contract of another party—not for and according to the contract with the plaintiff. McMillan v. Aiken, 205 Ala. 35,

40, 88 So. 135; Southern States Fire Ins. Co. v. Kronenberg, 199 Ala. 164, 74 So. 63; Nashville, C. & St. L. Ry. Co. v. Yarbrough, 194 Ala. 162, 69 So. 582; Carter v. Fulgham, 134 Ala. 238, 32 So. 684; Louisville & Nashville Railroad Co. v. Lancaster, 121 Ala. 471, 25 So. 733. There was no reversible error in refusing affirmative instructions requested.

■ The averments of the complaint and the proof of plaintiff bring the case within the rule of concealed dangerous defects—not obvious or discoverable by reasonable examination; unknown to tenant, but known to the landlord and not disclosed and contracted against.

■ The next insistence of appellant is, that the injuries sustained were slight and inconsequential. This question was determined by the jury on evidence of the physician which supports the sum fixed by the jury—$300. Moreover, there was no motion for a new trial challenging the amount as excessive.

As to the refusal of charges 12, 14, 6, 7, and 9, there is nothing to decide, as the insistence of error made does not come within the rule and dignity of the insistence in argument as required. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158; Futvoye v. Chuites, 224 Ala. 458, 140 So. 432; Johnson v. State, 152 Ala. 93, 44 So. 671; Republic Iron & Steel Co. v. Quinton, 194 Ala. 126, 69 So. 604; Western Union Telegraph Co. v. Benson, 159 Ala. 254, 48 So. 712.

■ The argument here made is sufficient to present for review the refusal of charges 13 and 18 requested in writing by defendant. Alabama Fuel & Iron Co. v. Williams, 207 Ala. 99, 91 So. 879. It is sufficient to say, charges 13 and 18, if not otherwise faulty and misleading, were abstract. There was no evidence that the repairs causing the injury or contracted against were made or to be made "after the plaintiff had moved in," or that the plaintiff moved into the house knowing that it had not been replastered.

■ Charges 15 and 16 were properly refused as exacting an improper degree of proof —requiring the jury to believe from the evidence, when "reasonable satisfaction" or "reasonable conviction" was sufficient (Oliver's Garage v. Lowe, 212 Ala. 602, 103 So. 586; Jefferson County v. Parker, 211 Ala. 289, 100 So. 338; Cain v. Skillin, 219 Ala. 228, 233, 121 So. 521, 64 A. L. R. 1022; St. Louis-San Francisco Ry. Co. v. Kimbrell, 226 Ala. 114, 145

So. 433)—and there was no error in their refusal.

 A question of evidence insisted upon by defendant is presented in the testimony of A. B. Wise. That witness had testified:

"The reason I was there was because Mr. Lacey called me out there to show me some work to do on that house. I think another lady was there at that time, but I am not positive who it was. At that time Mr. Lacey told me Mrs. Deaton wanted two doors of the house fixed and some of the floor fixed in the back porch and a few window lights fixed that were broken out and Mrs. Deaton said that was all that she could see right at that time that she wanted done to the house. Mr. Lacey told me he wanted me to fix the house for her, and if she found anything else she wanted fixed for me to go ahead and fix it, and I fixed what she told me to fix. * * *

"When I went to repair this place, I discovered that there was a little hole in the roof where somebody had hit it with a rock and knocked a hole through the shingles about as big as my thumb which would cause it to leak. That was a new break in the shingles in my judgment. I examined the shingle that had the hole in it and it was a practically new shingle. There was not anything inside of the room to indicate that the leak was up there before the plastering fell. There was not any sign down there.

"Thereupon defendant's counsel asked the witness the following question:

" 'Now, I will ask you if in your judgment the leak caused the plastering to fall?'

"The plaintiff objected to the question; the court sustained the objection; stating that it was for the jury to say what caused the plastering to fall, and the defendant excepted to the ruling."

In this ruling there was no error to reverse. The question called for the conclusion the jury should have drawn from all the evidence. Miller v. Whittington, 202 Ala. 406, 409, 80 So. 499.

The evidence showed the tenant had occupied the house for a substantial part of the lease when the injury was sustained, and the "break" or "hole" in the roof to which the witness referred was new, and that there was not anything inside of the room to indicate that the leak was up there before the plastering fell. There was not any sign down there that this was discovered by the witness after the plastering had fallen.

We find no reversible error, and the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.