152 So.2d 678

**Lena DAVENPORT**

v.

**Thomas R. BONNER et al.**

**4 Div. 27.**

Supreme Court of Alabama.

April 4, 1963.

Rehearing Denied May 9, 1963.

**132**

Tipler & Fuller, Andalusia, for appellant.

Albert L. Rankin, J. M. Albritton, and Albrittons & Rankin, Andalusia, for appellee Benton.

Prestwood & Prestwood, Andalusia, for appellee Howard.

Abner R. Powell, Jr., Andalusia, for appellee Bonner.

GOODWYN, Justice.

Appeal by the plaintiff (Lena Davenport) from a judgment rendered on a jury verdict in favor of each defendant (Thomas R. Bonner, William R. Howard, and Eileen W. Benton, as administratrix of the estate of S. Grady Benton, deceased) after the giving of each defendant's requested affirmative charge with hypothesis.

The action was brought to recover damages for personal injuries allegedly caused by a gas explosion. The complaint, as last amended, charges that defendants, "during the month of December, 1957, were engaged in the servicing, installation, removal, maintenance or operation of gas or gas appliances located in or near a residence or house on premises known as 123 Pecan Street in the City of Andalusia, Covington County, Alabama"; that they "did so negligently conduct the said servicing, installation, removal, maintenance, or operation of said gas or gas appliances that said defendants * * * negligently caused or negligently allowed a violent explosion of gas on said premises on, to-wit, December 10, 1957, and as the proximate consequence of said negligence of the defendants * * * the Plaintiff, who was then and there upon said premises as an invitee of the tenant of defendant, Thomas Bonner, where she had a right to be, received severe personal injuries in this, to-wit:

[Catalogue of injuries]

* * * all as the proximate consequence of the negligence of the defendants. * * "

The substance of the evidence may be stated as follows:

On December 10, 1957, the plaintiff, together with her sister, Mrs. James Meadows, and Mrs. Merle Webb, went to a house at 123 Pecan Street in Andalusia, Alabama, owned by defendant Bonner and

rented to Rev. Henry Wester, for the purpose of cleaning it. They went there with Rev. Wester's knowledge and permission. Defendant Howard had previously rented the house from Bonner and Rev. Wester and his wife were planning to move in that night. These ladies were members of Rev. Wester's church. He told Mrs. Webb the gas had been turned on and that it was safe to go into the house. A child of Mrs. Meadows and two children of Mrs. Webb went along with them.

They arrived at the house with their cleaning equipment about 2:15 P.M. in two cars. When they first got out of their cars, plaintiff stated she believed she smelled gas. She testified she did not smell any gas inside the house. The other two ladies testified that they did not smell gas at this time or at any other time during the visit, and that the children showed no signs of smelling gas.

The ladies, with their children, went inside the house, through the living room and into the kitchen. They stopped in the kitchen, then went through the bedrooms and back into the living room. It was a very cold day and all of the windows were closed. The ladies had checked the three space heaters to see if they were all turned off. While Mrs. Meadows, Mrs. Webb, and their children went on the front porch, plaintiff struck a match to light a heater when an explosion occurred injuring her.

Mrs. Webb and Mrs. Meadows testified that they did not know exactly why they went to the porch; that they just happened to be there when the explosion occurred. Mrs. Meadows was holding the screen door open at the time of the explosion. These two ladies and their children were also injured.

Mr. H. J. Eddings, a gas fitter and an original defendant, but later stricken as a party by amendment, testified that, about 1955, he installed a ¾ inch gas pipe in the house, about 30 or 40 feet long, going into the kitchen and sticking up through the floor a few inches near the wall. There was an underground butane gas tank outside the house, on which there was a cut-off valve above ground. When this valve was cut on, the gas would go from the tank to the appliances in the house without restriction, and if the end of the pipe in the kitchen was uncovered the gas would then run through the pipe into the kitchen. Eddings testified that he placed a cap on the pipe to restrain the flow of gas into the kitchen. He further testified that neither defendant Bonner nor anyone else asked him, on the day of the explosion, to go check the gas to see if it was safe to turn on. Plaintiff testified that she thought she remembered seeing this pipe and at the time remarked that that was where the washing machine should go.

Eddings testified that he knew about the gas which was in the tank on December 10, 1957, because he later converted the house to natural gas and the gas in the tank, about 160 gallons, "had the same odor that everybody else's had"; that he smelled it and "it smelled like a polecat."

Mr. Douglas Franklin testified that he was next door when the explosion occurred; that he had been in the driveway next to the house about twenty minutes before the explosion but had not smelled any gas at that time nor at any other time. After the accident he went into the house and saw the gas pipe in the kitchen. The pipe had no cover on it.

Defendant S. Grady Benton died before the trial, but his deposition was introduced in evidence. His wife was appointed administratrix of his estate and, as such, was substituted as a defendant.

Mr. Benton was the owner and operator of the Benton Gas and Appliance Company prior to the accident. He was qualified with the Alabama Liquefied Petroleum Gas Commission in 1957. His last delivery of gas to the house was on November 14, 1957, at which time he placed 200 gallons in the tank at the request of defendant Howard. Liquefied gas has no natural odor. As a safety precaution, an odorizing substance is

placed in it. It was stipulated by the plaintiff and defendant Benton that there existed certain rules and regulations, adopted by the Alabama Liquefied Petroleum Gas Commission, requiring that "all liquefied petroleum gas shall be effectively odorized by an approved agent of such character as to indicate positively, by distinct odor, the presence of gas down to concentration in air of not over one-fifth the lower limit of flammability."

Benton testified that the refineries put the odor in the gas, that it is tested by government inspectors, that he personally inspected each lot of gas coming from the refineries, and that he knew this gas was odorized. He further testified that, with respect to the amount of gas required to do the damage to this house, the odor would be sufficient to warn anybody with any judgment at all.

Defendant Howard rented the house from defendant Bonner in July, 1957, and moved out on November 20, 1957. When Howard moved into the house, either the movers or a gas man installed his butane gas stove and made the connection with the gas pipe in the kitchen. When the stove was installed, Howard had a cut-off valve put on both the pipe and the stove. He had always used this cut-off valve and, on moving out in November, 1957, he took the stove and the cut-off valve with him.

Howard turned the gas off at the valve on the tank before moving the stove. After shutting off the gas in this manner, he bled the line by turning on the space heaters. He testified that, at this time, there was a very strong odor of gas and that the gas definitely had been odorized. He then turned off the heaters.

Howard did not remember if there was a cap on the pipe when he moved in, nor whether he put one on when he left. Mrs. Howard testified that the gas pipe in the kitchen did not have a cap on it when they moved in, nor when they moved out. The Howards bought their gas only from defendant Benton.

Howard did not know plaintiff prior to the accident and had never invited her to the premises. Plaintiff had never seen Howard prior to her injury and it was her understanding when she entered the house that the house was under Rev. Wester's control. Rev. Wester, who succeeded Howard as a tenant in the house, had never seen Howard up to the time of the accident and Howard had made no representation to him about the condition of the house.

Between 10:00 and 10:30 on the morning of the explosion, Rev. Wester went to defendant Bonner's place of business to pay the first month's rent on the house. He got the key to the house from Bonner. At that time, they discussed the gas which had been left in the tank. Rev. Wester testified that Bonner told him he would call Mr. Eddings "and have him check the gas heaters and if they weren't all right he would let me know, or some words to that effect." This last testimony is in dispute, as both Bonner and his mother, who was in the store at the time, denied that such discussion took place.

About 1:30 P.M., on the same day, Rev. Wester unlocked the door of the house, walked through it to the backyard, turned on the valve at the gas tank, went back into the kitchen, through each of the bedrooms, and out the front door, leaving the house unlocked. He testified that he did not smell any gas at any time.

Thereafter, about 2:15 P.M., the plaintiff, with Mrs. Meadows, Mrs. Webb, and the three children came to the house, as above recited.

Our conclusion is that reversible error in giving the charges is not made to appear.

I.

*As to Defendant Eileen W. Benton, as Administratrix, etc.*

This defendant argues that the affirmative charge was properly given in her favor for several reasons, which may be stated, in substance, as follows:

(1) The complaint, as last amended, alleges that Benton and the other named defendants committed the negligent acts *"during the month of December, 1957,"* while the proof shows that the only connection Benton had with the accident was the delivery of gas to the tank on *November 14, 1957,* thus resulting in a fatal variance between the pleading and the proof.

(2) The original complaint alleged that Benton and the other named defendants were "engaged in the installation, removal, maintenance or operation of gas appliances ·in a residence" etc., while the amended complaint alleged that said defendants were engaged in the "servicing, installation, removal, maintenance or operation of gas or gas appliances located in or near a residence," etc. The contention is that this amended complaint added a new cause of action and, therefore, did not relate back to the commencement of the suit in point of time; that, since the amendment was made more than one year after plaintiff's injury, the statute of limitation had run against this defendant.

(3) Plaintiff failed to carry the burden on her of proving Benton's negligence. The contention, among other things, is that the trade requires the manufacturer to odorize the gas; that the evidence shows no obligation on defendant Benton to place odorant in the gas; that the rule of the Alabama Liquefied Petroleum Gas Commission does not say who is charged with odorizing the gas.

(4) There were "intervening efficient causes proximately resulting in the injury of plaintiff"; and that the acts of defendant Benton were remote to the accident.

(5) Plaintiff was contributorily negligent as a matter of law.

We think the first ground justified the giving of the affirmative charge with hypothesis in favor of this defendant, thus making it unnecessary to discuss the other grounds.

The complaint, as last amended, alleges that the negligent act occurred "during the month of December, 1957," ·while the evidence shows without conflict that Benton's only connection with the explosion on December 10, 1957, was his delivery of gas to the tank on the premises in July, 1957, and on November 14, 1957. The evidence fails to disclose any connection which Benton had with the gas or gas appliances at any time "during the month of December, 1957." In Nelson v. Cutter Boat & Motor Co., Inc., 260 Ala. 648, 652, 72 So.2d 86, this court again approved the following principles:

"(1) If a given and certain date is alleged in pleading, it must be proven, when not laid under a videlicet or· its equivalent. Atchley v. Wood, supra [255 Ala. 227, 51 So.2d 705]; Life & · Casualty Ins. Co. of Tennessee v. Latham, 255 Ala. 160, 50 So.2d 727.

"(2) When time is not material and is alleged under a videlicet, it need not be proved exactly as laid. Atchley v. Wood, supra; 16 Alabama Digest Pleading ☞391, p. 200.

"(3) A videlicet will not avoid a variance or dispense with exact proof in an allegation of a material fact. United States Health & Accident Ins. Co. v. Savage, 185 Ala. 232, 64 So. 340; Independent Life Ins. Co. v. Vann, 24 Ala.App. 93, 130 So. 520."

Here, the allegation of the date of the alleged negligent act is not laid under a videlicet or its equivalent. "During the month of December, 1957," is a given and certain date or period of time and is quite different from an allegation of an occurrence "on or about December, 1957." As said in Atchley v. Wood, supra:

"The principle is well understood that if a given and certain date is alleged in pleading, it must be proven. Williams v. McKissick, 125 Ala. 544, 27 So. 922; Mobile, J. & K. C. R. R. Co. v. Bay Shore Lumber Co., 158 Ala. 622,

48 So. 377. In those cases there was no *videlicet* nor its equivalent. A *videlicet* means on or about the day specified. J. R. Kilgore & Son v. Shannon & Co., 6 Ala.App. 537(12), 60 So. 520. * * *"

We note that Rules 34 and 35 of the Rules of Practice in the Circuit and Inferior Courts, Code 1940, Tit. 7, Appendix, are not applicable in this case since appellees are not attempting to put the trial court in error.

## II.

### As to Defendant William R. Howard

█ This defendant also argues that the affirmative charge was properly given in his favor for several reasons, which may be stated, in substance, as follows:

(1) There was a fatal variance between the pleading and the proof, similar to the contention made by defendant Eileen W. Benton, as administratrix, supra. The argument is that the complaint alleges the joint negligence of the defendants and asserts the negligent act as occurring "during the month of December, 1957," while it is undisputed that Howard gave up possession of the house on November 20, 1957, at which time he cut off the gas at the tank in the yard, leaving nothing dangerous about the premises, and thereafter had nothing whatever to do with the house and had no authority or control whatever over the premises; that he had made no representation whatever concerning the house; that his successor-tenant, Rev. Wester, turned on the gas at the tank on the day of the accident (December 10, 1957), without securing the gas outlet in the kitchen, thereby filling the house with gas; and that this defendant was nowhere near the premises, and had had nothing to do with the premises, since leaving on November 20, 1957.

(2) The complaint alleges a joint cause of action against all the defendants, while the proof does not disclose a joint liability; that "the defendants are entitled to the affirmative charge even though a several liability is established as to *one* of the defendants."

(3) Howard owed no duty to plaintiff.

(4) There was no evidence of any negligence on the part of Howard proximately contributing to plaintiff's injuries.

(5) Plaintiff was guilty of contributory negligence in lighting the heater after smelling the gas.

As in the case of defendant Eileen W. Benton, as administratrix, we think the first ground justified the giving of the affirmative charge in favor of Howard. Accordingly, there is no need of discussing the other grounds.

## III.

### As to Defendant Thomas R. Bonner

This defendant also insists that the affirmative charge was properly given in his favor for several reasons, which may be stated, in substance, as follows:

(1) After the trial court announced that affirmative charges were being given for the defendants Benton and Howard, plaintiff's attorney stated that, in view of such action, "he had just as soon that the court give it as to Bonner, so that he could take it all up and get it straight." The insistence is that plaintiff, by such action, "in effect consented to the court granting the affirmative charge in favor" of Bonner; that plaintiff's position on this appeal is inconsistent with such consent action, thus calling into play the doctrine of judicial estoppel.

(2) The evidence "failed to show any scintilla of negligence" on the part of this defendant.

(3) Even if it should be found that there was a scintilla of evidence of his negligence, there were two intervening causes which actually produced the plaintiff's injuries, viz.: First, the act of Wester in opening the gas valve at the tank on the

outside of the house and flooding the house with gas without checking to see whether there were gas openings inside the house. Second, "the obvious negligence of the plaintiff herself."

(4) This defendant being the landlord, the principle controlling his liability for injuries to his tenant's invitee is that a landlord, in the absence of a covenant to repair, or to keep in repair, "is only liable for injuries resulting from latent defects, known to him at the time of the leasing, and which he conceals from the tenant"; and that there was no evidence establishing this defendant's liability to plaintiff under said principle.

██ It is our view that the last ground justified the giving of the affirmative charge in favor of Bonner, the landlord, thus making it unnecessary to discuss the other grounds. The stated principle is fully supported by a long line of our cases, viz.: Southern Apartments, Inc. v. Emmett, 269 Ala. 584, 587(1), 114 So.2d 453; Uhlig v. Moore, 265 Ala. 646, 649(2), 93 So.2d 490; Faucett v. Provident Mut. Life Ins. Co. of Philadelphia, 244 Ala. 308, 310(1, 2), 13 So. 2d 182; Jefferson Standard Life Ins. Co. v. Watson, 242 Ala. 181, 184(3), 5 So.2d 639; Green v. Jefferson County Building & Loan Ass'n, 241 Ala. 549, 553(1), 3 So. 2d 415; Glover v. Birmingham Trust & Savings Co., 239 Ala. 423, 424(2), 195 So. 259; Lacey v. Deaton, 228 Ala. 368, 370–371(2), 153 So. 650; Hallock v. Smith, 207 Ala. 567, 568(1), 93 So. 588; Morgan v. Sheppard, 156 Ala. 403(4), 409, 47 So. 147. The plaintiff, having entered the premises under the tenant's (Wester's) title, can have no better right than the tenant against the landlord. Uhlig v. Moore, supra (265 Ala. at p. 649, 93 So.2d at p. 492); Hallock v. Smith, supra (207 Ala. at p. 568, 93 So. at p. 589).

Plaintiff relies heavily on Arlington Realty Co. v. Lawson, 228 Ala. 214, 153 So. 425, as being "authority precisely in point holding a landlord is not relieved by the independent intervening act of his tenant in cutting on the gas from liability for negligently causing gas explosion injuring the tenant's family or guests, where the tenant had good reason to believe from an agreement with his landlord that the landlord's service man had checked the service system after appliances were disconnected, and turned on gas without knowledge or reason to believe that a gas pipe had been left open and uncapped."

In the case before us, Rev. Wester testified, as already noted, that Bonner, about 10:00 or 10:30 on the morning of the explosion, told him he would call Mr. Eddings (a gas fitter) "and have him check the heaters and if they weren't all right he would let me know, or some words to that effect." Wester then went to the house about 1:30 that afternoon and turned on the valve in the yard that controlled the flow of the gas from the tank. He further testified that on the day before when he went to look at the house he noticed the pipe coming out of the floor in the kitchen; and that the pipe was an open pipe, without a cap on it.

There is no dispute that the gas which caused the explosion came into the house through the uncapped pipe in the kitchen. There is no indication that the gas heaters themselves were defective. Even if it could be said that Bonner agreed to have the heaters checked by Mr. Eddings, his failure to do so could not have been the proximate cause of the explosion for the simple reason that the heaters did not cause the explosion. The circumstances in the Arlington Realty Co. case are different from those present here.

From what we have said, it follows that the judgment appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.