(89 South. 201)

## LOUISVILLE & N. R. CO. v. PETTIS.
### (1 Div. 166.)

(Supreme Court of Alabama. April 21, 1921. Rehearing Denied May 19, 1921.)

**1. Master and servant 256(1)—Counts under federal act held good on demurrer.**

In an action against a railroad company for injuries to an employee, counts under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), averring that defendant was engaged in interstate commerce and that plaintiff was injured while employed therein, through the negligence of a fellow servant and a foreman, and while repairing a defective car, *held* sufficient on demurrer.

**2. Appeal and error 719(4)—Sufficiency of count as stating cause of action must be assigned as error.**

The overruling of a demurrer to a count of a complaint will not be reviewed, where not presented by an assignment of error.

**3. Trial 169—Request for instruction will not reach sufficiency of complaint.**

The sufficiency of a complaint as stating a cause of action, though defective in its allegations for the purpose, cannot be raised by requests for instructions.

**4. Master and servant 265(1)—Employee, claiming under federal act, must prove interstate service.**

Under counts declaring that plaintiff at the time of his injuries was engaged in interstate commerce, within the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), the burden is on plaintiff to show, prima facie at least, the interstate relation of his service.

**5. Master and servant 284(1)—Interstate character of service of employee repairing car held question for jury.**

In an action against a railroad company for injuries to an employee while repairing a coal car, the day after it was cut out of an interstate train, *held*, that the question whether the car had lost its relation to interstate commerce was for the jury.

**6. Courts 97(5)—Liability of railroad company for injury to employee while repairing car removed from interstate train determined by federal decisions.**

Whether an employee of a railroad company, injured while repairing a coal car which

had been removed from an interstate train for repairs, was engaged at the time of the injury in the service of interstate commerce, is to be determined by opinions of federal tribunals.

**7. Trial ⊛⇒260(1) — Refusal of instructions covered in charges given not reversible.**

The refusal of instructions substantially given in other charges is not reversible error.

**8. Commerce ⊛⇒27(8) — Instruction on interstate commerce character of car removed from train for repairs properly refused.**

In an action against a railroad company for injuries to an employee while repairing a car, shortly after it had been removed from an interstate train for such purpose, defendant's instructions that plaintiff was not engaged in interstate commerce if the car was being generally overhauled, and was not destined permanently to interstate commerce, nor to anything more definite than such business as it might be needed for, were properly refused, being subject to the interpretation that the use of the car, present or prospective, in interstate commerce, exclusively determined its relation to such commerce, whereas the car, though empty and without assignment to a present or particular future interstate service, might have continued to be an element in interstate commerce; a temporary suspension of its progress across state lines being ineffectual to denude it of its character as an instrumentality in interstate commerce.

**9. Master and servant ⊛⇒284(3) — Scope of employment held question for jury.**

In an action by a railroad employee for injuries while repairing a car, held, that the question whether he was engaged in the performance of the service for which he was employed at the time of the injury was for the jury.

**10. Master and servant ⊛⇒89(1) — Employee, outside scope of employment, cannot recover for injuries.**

If the service plaintiff was performing at the time of the injury was outside the scope of his employment, or was not directed or acquiesced in by a representative of defendant authorized to control such service, defendant would not be accountable for injuries from a fellow servant's acts.

**11. Master and servant ⊛⇒157 — Servant, forbidden to perform dangerous act, not entitled to further warning.**

If an employee of a railroad company, who was injured while letting down the dump doors of a coal car with a wrench, a dangerous operation, was forbidden to do so, he should not have undertaken the operation, unless his superior directed him to do so, and there was no duty on the master or his superintendent to warn him otherwise of the danger of the operation.

**12. Master and servant ⊛⇒286(13) — Issue of defective condition of car held for jury.**

In an action against a railroad company for injuries to an employee while letting down the dump doors of a coal car, where the evidence to support the allegation that the condition of the car was defective showed that the doors were rusted and stuck, and that the mechanism designed to open the doors would not serve the purpose through its ordinary operation, held, that an affirmative charge against recovery was properly refused.

**13. Appeal and error ⊛⇒1043(6) — Striking answers to interrogatories made by defendant not prejudicial, where rulings retracted and answers were not offered in evidence.**

Where the court retracted rulings striking parts of answers to interrogatories made by defendant, defendant was not prejudiced thereby, though the subjects thereof were not read to the jury after such retraction; it being for defendant to offer them in evidence.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Action by Grover C. Pettis against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Count 1 is as follows:

Plaintiff claims of the defendant the sum of $10,000 for that heretofore, to wit, on the 3d day of March, 1917, while in the employment of the Louisville & Nashville Railroad Company, at Mobile, Ala., he was injured by being struck in the face with a dump wrench, by reason of which [here follows catalogue of injuries alleged to be permanent, together with the damages growing therefrom]. And plaintiff avers that at the time of his said injury the defendant was engaged in interstate commerce in several states in the United States, and the plaintiff was employed in such commerce in and about the repair of the coal car, and was then and there injured by reason of the negligence of one Spiro Argiro, who was then and there in the employment of the defendant.

Count 2, after stating the employment and the injuries as stated in count 1, avers as follows:

And the plaintiff avers that at the time of his said injury the defendant was engaged in interstate commerce in several states in the United States, and the plaintiff was employed in such commerce in and about the repair of a coal car of defendant, and was then and there injured by reason of the defective condition of said coal car in and about the repair of which the plaintiff was working under said employment.

Count 3, after stating the employment and damage as in count 1, alleges as follows:

And the plaintiff avers that at the time of his said injury the defendant was engaged in interstate commerce in several states of the United States, and the plaintiff was employed in such commerce in and about the repair of a coal car, and was then and there injured by reason of the negligence of one Fred Hempfleng, who was the foreman and had superintendence and control of the said Spiro Argiro and of the plaintiff under said employment.

The following charges were refused to the defendant:

A. The court charges you that plaintiff was not engaged in interstate commerce, if the car upon which he was working when injured was being generally overhauled, and was not destined permanently to commerce among the states, and was not destined to anything more definite than such business as it might be needed for.

D. The court charges the jury that the nature of the car upon which plaintiff was working when injured, as an instrument of commerce, depended upon its employment at the time, and not upon remote probabilities, or upon accidental later events.

E. If you believe from the evidence that the car upon which plaintiff was working was not at the time destined to anything more definite than such business as it might be needed for, then you cannot find that it was engaged in interstate commerce.

The following charges were given at the request of the defendant:

B. If you believe from the evidence that at the time plaintiff was injured he was working on a car which was not at that time consigned to any future use or trip, and at that time it was uncertain as to what use or what nature of work or business the car would be put to after the completion of the repairs, then you cannot find that plaintiff was engaged in interstate commerce.

C. If you believe from the evidence that the car on which plaintiff was working at the time he was injured was not assigned to interstate commerce business, but its future use was uncertain and merely problematical, then you cannot find for the plaintiff under the counts alleging that plaintiff was engaged in interstate commerce.

Smiths, Young, Leigh & Johnson, of Mobile, for appellant.

Before recovery can be had under the federal Employers' Liability Act it must be shown that the implement of commerce upon which plaintiff was at work was at the very moment of his injury employed in interstate commerce, and it was not so employed, unless it was assigned to such commerce at the very time of the injury. 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; 239 Fed. 713, 152 C. C. A. 547; 195 Ala. 382, 70 South. 655, Ann. Cas. 1917E, 292; 200 Ala. 251, 76 South. 17. The court erred in suppressing interrogatory. One injured while engaged in work, not assigned to him by the master, cannot recover of the master for such injuries. 194 Ala. 126, 69 South. 604; 122 Ala. 231, 25 South. 34; 6 Ala. App. 317, 59 South. 311. It is not negligent to fail to warn the employee against danger, where there is no reason to believe that he will be subjected thereto. 164 Ala. 84, 51 South. 385. See, also, 174 Ala. 625, 57 South. 441, and Labatt, M. & S. § 1531.

On rehearing, counsel insist that the right

shall be determined either by the state law or the federal law, and cannot be determined by both. 244 U. S. 147, 37 Sup. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139; 244 U. S. 170, 37 Sup. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; 244 U. S. 360, 37 Sup. Ct. 620, 61 L. Ed. 1194.

Harry T. Smith & Caffey, of Mobile, for appellee.

The complaint sufficiently set up the cause of action under the federal Employers' Liability Act. 194 Ala. 94, 69 South. 611; 199 Ala. 377, 74 South. 580. Negligence was sufficiently averred. 57 Ala. 145; 194 Ala. 134, 69 South. 540; 198 Ala. 590, 73 South. 933. The facts alleged show a duty owing. 6 Ala. App. 413, 60 South. 486; 196 Ala. 107, 72 South. 35; 178 Ala. 515, 59 South. 445; 200 Ala. 543; 151 Ala. 327, 43 South. 841. The court properly submitted the question of liability to the jury. 239 U. S. 349, 36 Sup. Ct. 124, 60 L. Ed. 322; 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54. Charges A, B, and E were fully covered by given charges B and C.

McCLELLAN, J. [1] The plaintiff (appellee) was severely injured while assisting another employee of the defendant (appellant) in opening "dump doors" in the bottom of a freight car, belonging to defendant, commonly used to transport coal, slag, etc., these doors having become "stuck." The defendant is a common carrier, engaged in intra- and interstate commerce. Counts 1, 2, and 3, declaring on causes of action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), were not subject to the demurrers addressed thereto. Southern Rwy. v. Peters, 194 Ala. 94, 97, 69 South. 611; Southern Rwy. v. Fisher, 199 Ala. 377, 379, 380, 74 South. 580. Decisions of this court, defining the essentials of sufficient pleading, under the Alabama Employers' Liability Act (Code, § 3910 et seq.), are not controlling, if serviceable at all, in determining the sufficiency of counts drawn to state causes of action under the federal Employers' Liability Act.

There were other counts declaring on causes of action referable to common-law duties of a master to the servant, as well as to the Alabama Employers' Liability Act.

[2, 3] We find no assignment of error presenting for review the action of the trial court in overruling demurrer to count 26. Where a count states a cause of action, but is conceived to be defective in its allegations for the purpose, the sufficiency vel non of the count cannot be raised by requests for instructions to the jury.

[4, 5] The court submitted to the jury the determination of the issue whether plaintiff was, at the time of his injury, engaged in an interstate service within the purview of the federal Employers' Liability Act. Un-

der counts so declaring the burden of proof was upon the plaintiff to show, prima facie at least, this interstate relation of his service at the time he was injured. Ex parte A. C. L. Ry. Co., 190 Ala. 132, 67 South. 256; L. & N. R. R. Co. v. Carter, 195 Ala. 382, 384, 70 South. 655, Ann. Cas. 1917E, 292. Whether plaintiff was so engaged in a service related to interstate commerce, within the federal Employers' Liability Act, depended entirely, under the evidence, upon the further inquiry: Was this freight car on which he was at work an instrumentality of such commerce at the time he was injured? And, since this car, returning from New Orleans, La., to Birmingham, Ala., was actually in the current of interstate movement, in an interstate train, when it was "cut out" of that train at Mobile, Ala., to be given at the Mobile shops needed repairs, the still further inquiry, controlling the solution of the issue stated, was whether this car had been withdrawn from its interstate movement at the time plaintiff was injured.

Testimony bearing upon this final inquiry was offered by both sides. The removal of the car from the course of its interstate movement took place at Mobile in the nighttime, March 2–3, 1917, before plaintiff's injury on March 3, 1917. The pith of the issue was the relation of the car to interstate commerce at the time of plaintiff's injury, though its subsequent retention at Mobile, its later direction or movement to Birmingham, were circumstances relevant to the issue stated. The period elapsing between the arrival of the car at Mobile (the night of March 2–3, 1917), and the injury of the plaintiff the next day (March 3, 1917) was not sufficiently protracted to justify a conclusion of law that the car had been so withdrawn from its interstate movement as to denude it of the interstate character the car had when actually in the course of progress from New Orleans, La., to its assigned destination at Birmingham, Ala. If the repair of the car had been undertaken while in immediate transit, without removing it to the shop yards, there could have been no sound contention but that the car continued to be an instrumentality in interstate commerce. At what stage or time this car lost, if at all, its relation to interstate commerce, an actual unit of such commerce, when it came into Mobile, Ala., lay in inference and deduction, and the jury's judgment was necessary to the solution of the inquiry under the whole evidence bearing on the issue.

The facts that the car had completed its interstate haul of coal to Louisiana from Alabama, and was returning empty, via Mobile, to the Alabama coal fields for assignment to either intra- or interstate commerce upon or after its arrival at Birmingham, Ala., did not conclude the inquiry. An empty car, en route over state lines, may be an instrumentality in interstate commerce.

It is the relation of a car to interstate commerce, at the time in question, that characterizes it as an instrumentality in such commerce. The presence or absence of an interstate burden on the car will not always necessarily conclude the inquiry, though the evidential value of this circumstance is not, of course, to be ignored or its probative force minimized in proper cases. Rolling stock is essential to the conduct of interstate commerce, and its relation thereto depends upon the use to which it is assigned. 12 C. J. p. 38. Rolling stock, though without burden, in the course of uninterrupted movement across state lines, for future assignment or use in either intra- or interstate commerce, is at the time of such movement so related to interstate commerce as to be an instrumentality in interstate commerce. When it arrives at the destination of such interstate movement, its character as an instrumentality in interstate commerce may, according to circumstances, cease, or its assignment to an interstate service may continue or renew its character as an instrumentality in interstate commerce; but during the course of such interstate movement it is an instrumentality in interstate commerce until its progress to destination has been so interrupted or deflected as to effect a withdrawal from such movement, and hence denude the rolling stock of the character with which its interstate movement invested it.

[6] The question is distinctly federal, and is to be determined by authoritative or persuasive pronouncements by federal appellate tribunals. In Erie R. Co. v. Collins, 253 U. S. 77, 40 Sup. Ct. 450, 452, 64 L. Ed. 790, the Supreme Court has restated its pertinent decisions. In Minneapolis R. R. Co. v. Winters, 242 U. S. 353, 356, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54, the engine there in question was at rest in a roundhouse at a division point in Iowa, having completed its last interstate assignment and not having been assigned to another interstate service. See facts recited in the same case as reported in 126 Minn. 260, 263, 148 N. W. 106. In the Winters Case a distinction was observed by the Supreme Court between a railway permanently devoted to commerce among the states and rolling stock not permanently devoted to any particular kind of commerce—a character of instrument that depends for its relation to interstate commerce "on its employment at the time, not upon remote probabilities or upon accidental later events." The facts discriminate the case at bar from the Winters Case, supra. There the engine was at rest and unassigned to any kind of commerce; whereas, here the car was en route, and was out of the train at Mobile for repairs—a circumstance that projected the inquiry, whether its interstate movement from Louisiana to Birmingham, Ala., was only interrupted,

only suspended (see Great Northern v. Otos, 239 U. S. 349, 36 Sup. Ct. 124, 60 L. Ed. 322, an action under the Safety Appliance Act [U. S. Comp. St. § 8605 et seq.]), or was entirely terminated at the time plaintiff was injured. Like considerations discriminate Central R. Co. v. Paslick, 239 Fed. 713, 152 C. C. A. 547. The decision in Central R. Co. v. Sharkey, 259 Fed. 144, 146, 170 C. C. A. 212, on even weaker indicia of interstate employment of the car, accords with the view we have indicated, though there the repair of the car was with the prospective intent to "rush," to move the car from the place of repair in New Jersey to Philadelphia, Pa. Apart from general pronouncements in definition of the federal Employers' Liability Act, the cases of L. & N. R. R. Co. v. Carter, supra, and Mathews v. A. C. S. R. R. Co., 200 Ala. 251, 76 South. 17, are not of authoritative service on the question now under consideration.

The general affirmative instructions, requested for defendant (appellant), on the theory that plaintiff was not shown to have been engaged at the time he was injured in the service of interstate commerce, were properly refused.

[7, 8] The defendant (appellant) requested, and the court refused, special charges A, D, and E. These, with instructions B and C, given to the jury at the request of defendant, will be reproduced in the report of the appeal. Such of the substance of these refused requests for instruction (A, D, and E) as deserved statement to the jury was stated in given charges B and C, thus averting any possible imputation of error in the refusal of requests A, D, or E. Furthermore, requests A and E were open to criticism in these particulars: They were subject to the interpretation that they proceeded upon the too contracted premise that the use of the car, present or prospective, in bearing or being assigned to bear burdens constituting interstate commerce necessarily, exclusively determined the car's relation to interstate commerce; whereas, the car itself, though empty and without assignment to a present or particular future interstate service, might have continued, after its arrival in Mobile, en route from New Orleans, La., to Birmingham, Ala., to be an element in interstate commerce—a temporary suspension of its progress to destination across state lines being ineffectual to denude such car of its character as an instrumental unit in interstate commerce. U. S. v. Colorado R. Co. (8th Circuit Court of Appeals) 157 Fed. 321, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167, 13 Ann. Cas. 893, 895, first column; Int. Comm. Comm. v. Ill. Cent. R. R., 215 U. S. 452, 474, 30 Sup. Ct. 155, 54 L. Ed. 280; Welton v. Missouri, 91 U. S. 275, 280, 23 L. Ed. 347; 12 C. J. p. 38.

[9] Aside from the counts declaring under the federal Employers' Liability Act, the case was submitted to the jury on the issues arising out of the averments made in counts 4, 8, 10, 14, 31, and 32, declaring on causes of action for the breach by the master of the common-law duty to exercise reasonable care and diligence in the employment or retention of competent fellow servants (count 26) and on causes of action predicated of the Alabama Employers' Liability Act (Code, § 3910).

[10] Whether the plaintiff was, when injured, engaged in the performance of the service or duty for which he was employed, was, on this record, a question due to be submitted to the jury for decision. It cannot be affirmed as a matter of law that plaintiff was not so engaged at the time he was injured. If the particular service plaintiff was performing (when injury befell him) was outside the scope of his employment, or was not directed or enjoined upon him by a representative or representatives of the defendant authorized to control plaintiff's service, or this particular service was not knowingly acquiesced in by a representative who had authority to control the plaintiff's service in that regard, the plaintiff's relation to that corporation would be referable to his voluntary act, and the defendant would not be responsible for his injury. Republic Iron Co. v. Quinton, 194 Ala. 126, 69 South. 604. Southern Ry. v. Guyton, 122 Ala. 231, 240, 25 South. 34. As stated, these inquiries were for the jury to decide under the whole evidence. If Argiro had no authority to assign plaintiff to this particular service or to require his assistance therein, the defendant could not be held accountable for the consequence resulting from Argiro's acts, request, or command in the premises. Of course, if plaintiff was rendering this service under the direction of defendant's superintendent, it would be immaterial what authority Argiro had in the premises.

[11] Whether plaintiff was forbidden to let down the dump doors with the "wrench" —a dangerous operation—was, also, an issue contested in the evidence. If he was so inhibited, he should not have undertaken the operation, unless his superior directed him to do so; and, if he was thus inhibited, there was no duty on the master or the master's superintendent to warn him otherwise of the danger of such an operation.

[12] It is insisted for the appellant that it was due the affirmative charge against a recovery on count 2 on the ground that there was no evidence tending to sustain the averment that the "condition" of this car was "defective." The testimony went to show that the "dump doors" of this car were rusted and "stuck," and there was evidence tending to show that the mechanism designed to open these doors would not serve the purpose through its ordinary operation. It cannot, therefore, be affirmed, as a matter of law, that there was no evidence tending to

support the indicated averment of count 2 that a defective condition existed in respect to this car.

[13] The court having retracted its previous rulings striking parts of the answers to interrogatories made by defendant, no prejudice resulted to defendant from those rulings. If the subjects of these particular rulings were not read to the jury after the court retracted its earlier action in the premises, the omission or its effect cannot be attributed to the plaintiff. Following such retraction, the defendant should have offered the matters (separated answers) in evidence.

There are no assignments of error presenting for review the action of the court in overruling demurrers to counts 31 and 32. No prejudicial error assigned and appearing, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.