168 So. 181

**TAYLOR v. ATLANTIC COAST LINE R. CO.**

**4 Div. 850.**

Supreme Court of Alabama.

May 14, 1936.

Walters & Walters, of Troy, for appellant.

A. H. Arrington, of Montgomery, for appellee.

380

BOULDIN, Justice.

Action for personal injuries under the Federal Employers' Liability Act (45 U.S.C.A. §§ 51–59).

Plaintiff, Herbert A. Taylor, was in the employ of defendant, Atlantic Coast Line Railroad Company, as a lineman in the maintenance of the telegraph and telephone service of the railway company. His employment was known and styled "telephone maintainer."

The complaint alleged, and evidence tended to show, that while engaged in this service, admittedly in interstate commerce, plaintiff climbed a telephone pole to replace defective or broken insulators, and while in this position, B. A. Tippins, who was assisting him at the time, threw up to him a glass insulator, which struck and injured plaintiff's right leg, dislocating the cartilage covering of the kneejoint. The injury is charged to the alleged negligence of Tippins.

■ One of the main issues of law and fact went to the question of Tippins' act being within the line and scope of his employment, an essential element in the liability of defendant under the doctrine of respondeat superior.

Taylor was at the time under the superintendence of J. R. Ivey, telephone supervisor, having authority and superintendence over the telephone system of defendant railway. Taylor's employment was on the division from Thomasville, Ga., to Montgomery, Ala.

Tippins' employment was that of "lamplighter," whose duties were to keep in order and duly functioning the signal lights from Dothan to Montgomery. He was under the superintendence of L. F. Brabham, roadmaster.

The employment of Taylor and that of Tippins called for work along the stretch of railroad between Dothan and Montgomery. Each was furnished separate means of transportation, but they frequently found it convenient to go together on the hand-car furnished Taylor. On such trips Tippins assisted Taylor in his work, including replacement of insulators, sometimes passing them up by line, and at others pitching them up as in the present instance.

This assistance had continued for several months. Plaintiff testifies that he had spoken to his superintendent, Ivey, also to Tippins' superintendent, Brabham, and both had consented for Tippins to so assist him. This was denied by these officers, who disclaimed any knowledge, consent, or direction touching such service.

In submitting this issue to the jury the court gave written charges 2, 4, and 7, at the instance of the defendant.

The giving of these charges is presented for review.

One criticism is leveled at the word "directed" in charge 2, also "authorized and directed" in charge 4, and "authorized or directed" in charge 7.

It is insisted these charges restricted the inquiry to an express direction by the superintending officer or officers, putting Tippins into this telephone maintenance service.

■ It is true that authorization may arise from consent, express or implied, to engage in another and different service as part of one's employment. Louisville & N. R. Co. v. Pettis, 206 Ala. 96, 89 So. 201; Republic Iron & Steel Co. v. Quinton, 194 Ala. 126, 69 So. 604; 39 C.J. p. 277 et seq., § 403, a and b.

■ Clearly in a case like this, Tippins and Taylor could by no arrangement as between themselves put Tippins into the telephone service, so as to render his employer liable for negligence in the performance of such service. If, as a volunteer, or at Taylor's request, he was merely helping Taylor as an accommodation, this would not extend the line and scope of his employment. Officers, informed of such situation, and consenting thereto, would not necessarily thus enlarge the scope of Tippins' employment. Stated differently, there must have been an authorization, express or implied, for Tippins to enlarge the scope of his employment, acting for his employer, not merely as a friend of Taylor in a voluntary service outside his department. As stated in the oral charge, there must have been an assignment to this further service, either expressly, or by implication from all the circumstances.

■ In the light of the evidence and the court's oral charge we are of opinion these charges were, at worst, only misleading, calling for an explanatory charge, if desired by plaintiff.

The "officers" mentioned in the charges, in the light of the evidence, could only have referred to the superintendent of the telephone service or the roadmaster. They

were frequently referred to as "officers." The jury's attention was directed to no other.

It seems conceded that Tippins must have had authority from the roadmaster, the man under whose supervision he worked.

In sustaining charge 7, we would not be understood as holding that the roadmaster, as matter of law, could put men into the telephone service, a wholly separate department, without the consent of the superintendent of that department, or some higher official, having supervision over both. This phase of the law is quite clearly discussed in Republic Iron & Steel Co. v. Quinton, 194 Ala. 126, 69 So. 604, and Louisville & N. R. Co. v. Pettis, 206 Ala. 96, 89 So. 201. In this regard charge 7 was favorable to plaintiff.

Plaintiff, having testified to an examination of his leg in 1933, by Dr. Edge, a physician, who made an X-ray picture, was further asked by his counsel: "What did that doctor tell you in reference to the condition of your knee?" Objection was sustained and exception reserved.

We find no error in this ruling. A sufficient ground for refusing such evidence was the admitted fact that at the time of this examination by Dr. Edge plaintiff had received a further injury to the knee.

There was a sharp controversy as to whether substantial injury to the knee was wholly the result of the subsequent accident.

But the broader ground is that the unsworn opinion of a physician, like any other expert, is mere hearsay. The proper method of proving the result of Dr. Edge's examination was to examine him as a witness. This was done, and his testimony to the effect that he thought plaintiff had a dislocated cartilage at the knee joint was admitted. True, there are cases in which the opinion and advice of a physician on examination of a patient may become pertinent evidence, just as advice of counsel may be, dependent on the issues involved.

Among these is the well-known rule that a physician in giving his opinion upon the condition of health of his patient, or any disease with which he is afflicted, may and should go into his examination and diagnosis. The history of the case as given him by the patient, or reports of other physicians, may all be given in evidence in connection with, and as part of, the examination leading to his opinion.

Other cases involve the propriety and good faith of action thereafter taken by the patient on such advice, when such issues are involved.

Thus, in Rocci v. Massachusetts Accident Company, 226 Mass. 545, 116 N.E. 477, 478, a sickness indemnity insurance policy required the insured by reason of sickness to be "necessarily and continuously confined within the house." The insured had been removed from one house to another. In explanation, he introduced evidence of his physician that an emergency required such removal, and he was permitted to testify that he was ordered by his physician to do so.

This case, and the text of Corpus Juris, based thereon, are cited as authority for our recent decision in Franklin Life Ins. Co. v. Brantley, 165 So. 834, 837,[1] an action for disability benefits. The court held admissible statements and advice of physicians on which the insured acted as "part of the res gestæ of the examination that caused him to retire from business, make his claim against the defendant for disability, for which this suit was brought."

We would not extend the rule to include the unsworn opinion of a physician touching the extent of injury from accident, in the absence of circumstances rendering such opinion a matter proper to be considered as part of the case. This would open wide the door to hearsay evidence. That this plaintiff, after consulting Dr. Edge, went to a hospital where an operation was performed by another surgeon, and the dislocated cartilage found and removed, did not render the rejection of such testimony erroneous. No question was raised as to the propriety of incurring a hospital bill.

Plaintiff had the benefit of the sworn testimony of the physicians. The issues of fact were for the jury. They were found against plaintiff. Under well-known rules, their finding was properly left undisturbed on motion for new trial.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

---

[1] 231 Ala. 554.