257 So.2d 839

**CENTRAL OF GEORGIA RAILWAY COMPANY, a Corporation**

v.

**W. R. REEVES.**

**6 Div. 835.**

Supreme Court of Alabama.

Jan. 13, 1972.

Rehearing Denied Feb. 24, 1972.

Sadler, Sadler, Sullivan & Sharp and Ray O. Noojin, Jr., Birmingham, for appellant.

**122**

Rives, Peterson, Pettus, Conway & Burge and Edgar M. Elliott, Birmingham, for appellee.

BLOODWORTH, Justice.

Appellee, W. R. Reeves (plaintiff below), filed suit under The Federal Employers Liability Act against his employer, appellant Central of Georgia Railway Company (defendant below), seeking damages for injuries arising out of the derailment of one of appellant's trains at Griffin, Georgia. There was a jury verdict and judgment for appellee for $50,000. Appeal is from this judgment and the overruling of motion for a new trial.

There are a number of assignments of error. But, the determinative issue before this court is whether the admission of appellee's testimony as to what an examining physician told him concerning the nature and extent of his injuries was a violation of the hearsay rule.

We are of the opinion that the admission of such testimony was violative of the hearsay rule and that the judgment must be reversed on account of its erroneous admission.

Appellant's assignment of error raising this issue is as follows:

"(45) The Trial Court erred in overruling the Defendant's (Appellant's) Motion for a New Trial, which contained the following ground:

"'45. For that the Court erred in allowing the following testimoney (sic) which was properly objected to by the defendant's counsel:

"'Q. (BY MR. RIVES): Did you go see Dr. Bunderant?

"'A. (BY MR. REEVES): Yes, sir, I went to see Dr. Bunderant, and he gave me a complete physical. Dr. Bunderant, he examined me. When he got through examining me, he told me I had—

"'MR. SHARP: Judge, I object to what Dr. Bunderant said as being hearsay.

"'MR. RIVES: Your Honor, he is the agent selected by the company.

* * * * * *

"'MR. SHARP: Yes, sir. If they wanted to get some testimony about what

Dr. Bunderant said, I think the proper way to do it is to schedule his deposition over there and let Dr. Bunderant state what he said.

" 'I think this is hearsay. It is not the best evidence to allow this man to come in and give hearsay testimo*ney* (sic) to what Dr. Bunderant said. And I object to it on that basis.

" 'THE COURT: Overrule the objection.

\*　　\*　　\*　　\*　　\*

" 'A. Dr. Bunderant examined me. When he got through examining me he told me that I had a weakness in my right arm, a dead place on the inside of my arm, and stiffness in the neck, and had nerve trouble in the roots of my back, said I wasn't physically able to do the work, and just too many people's lives were involved.' "

It is well established in Alabama that testimony by a witness in court as to statements made out-of-court by a physician is inadmissible as hearsay. Taylor v. Atlantic Coast Line R. Co., 232 Ala. 378, 168 So. 181 (1936); Hornaday v. First Nat. Bank of Birmingham, 259 Ala. 26, 65 So. 2d 678 (1952); Mallory v. Mallory, 272 Ala. 464, 131 So.2d 703 (1961); Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716 (1967); 31A C.J.S. Evidence § 242, Note 77, p. 650.

However, appellee insists that the testimony should be admissible in this instance to show that appellee suffered mental anguish and to explain his mental condition which he says resulted from the statements having been made to him. Counsel for appellee articulates this position in brief as follows:

"There are two reasons this testimony was admissible in this case and both involve the fact that the validity of the opinion and the truth of the facts as stated by Dr. Bond*u*rant were not in issue. First, there was a claim in the complaint for mental anguish undergone by the plaintiff as a result of the injuries which he received in the accident.

Second, the plaintiff's injuries were inextricably involved with his mental condition by virtue of a conversion hysteria reaction brought upon by the accident itself and his inability to work thereafter. Certainly, any testimony which contributed to an understanding of his mental condition was relevant. The fact of the advice to him by Dr. Bund*u*rant (whether his opinion was correct or not) that he had a weakness in his arm, a stiffness in his neck, nerve trouble and that he would be able to work no longer played a part in his mental condition, and thereby in his physical condition. His mind acted upon these statements. The question is whether the statements were made to him; not whether they were true. Dr. Bond*u*rant may have been incorrect in his diagnosis and in his opinion that Mr. Reeves could not work, but it would make no difference. Mr. Reeves accepted it. Thus, there was no need to cross-examine Dr. Bond*u*rant."

This is a unique argument and, as might be expected, there is little applicable precedent in Alabama for these contentions.

A decision which appears to be directly in point is Alabama Great Southern R. Co. v. Arnold, 80 Ala. 600, 2 So. 337 (1887). In *Arnold,* the plaintiff, in attempting to take a train at Boligee, in Greene County, stepped on a hard substance, his foot slipped, and he fell from a poorly lighted railway platform to the ground severely cutting and bruising his private parts on a corner of the steps, or other hard substance, necessitating a dangerous surgical operation. Recovery was sought on allegations in the complaint, inter alia, that plaintiff had suffered "great pain and inconvenience, mental suffering, anxiety and suspense \* \* \*.". Over defendant's objection, plaintiff was permitted to testify that "he was told by Dr. Mastin (the surgeon who operated upon him) that to relieve him would require a dangerous operation."

The reported opinion does not indicate whether the trial court admitted this evidence for the purpose of proving the mental

suffering plaintiff endured as a result of the injury. As a matter of fact, there is no indication as to the reason for the trial court's ruling. Neither is there in the instant case.

This court, in the opinion authored by Mr. Justice Clopton, reversed the trial court for admitting this testimony. The court held:

"While the nature and danger of the operation to which plaintiff was subjected are proper circumstances to be considered in determining the anxiety and mental and physical pain caused thereby, and while it may have been proper to show the mere fact that he was *informed,* without calling for the declarations themselves, *it is not permissible to prove by the plaintiff, for any purpose, what the surgeons said to him. They do not fall within any of the exceptions to the general rule of the inadmissibility of hearsay evidence.* Blackman v. Johnson, 35 Ala. 252. Reversed and remanded." [Emphasis ours]

This decision, which has been the law for 85 years in Alabama, would seem clearly to dispose of this question were it not for a later case which, at first blush, appears to reach a contrary result. That case is Franklin Life Ins. Co. v. Brantley, 231 Ala. 554, 165 So. 834 (1936), which is relied on by appellee.

In *Brantley*, plaintiff sued to recover disability benefits under a policy of life insurance. Over objection of defendant, plaintiff was allowed to testify as to the diagnosis related to him by several doctors, and specifically that various doctors had told him that the state of his health demanded that he retire from his business. This court, in an opinion by Mr. Justice Thomas, in affirming the trial court's judgment stated as follows:

"The admission in evidence, over objection and exception, of the fact that, on examination of plaintiff by physicians, the latter made statements to him and gave advice on which he acted, was without reversible error. These statements were a part of the res gestae of the examination that caused him to retire from business, make his claim against the defendant for disability, for which this suit was brought, as well as claims against several other insurance companies, and which claims, or due proof thereof, are in evidence. The material issues of fact were plaintiff's disability vel non and the nature and extent, if he was suffering from disability. 29 C.J. p. 284; Rocci v. Massachusetts Accident Company, 226 Mass. 545, 116 N.E. 477.

"In Mutual Life Insurance Company v. Tillman, 84 Tex. 31, 36, 19 S.W. 294, 297, the observation was made that opinions expressed by physicians in the course of their examinations of the patient were in the nature of res gestae and admissible as 'declarations * * * made in the course of their business, and while engaged in a professional duty,' and 'were coincident business declarations.' * * *"

We have carefully considered *Brantley* and have concluded that it is not valid authority for admission of the evidence in question in the instant case.

In the first place, if the holding in *Brantley* is that any opinion expressed by a physician to the patient during examination is "in the nature of res gestae" and that the patient's testimony as to such opinions is admissible as "'declarations * * * made in the course of their business, and while engaged in a professional duty,'" then the case seems clearly to be in conflict with the great preponderance of Alabama case law. Our rule, which we have heretofore stated, is:

"Extra-judicial statements of a doctor are hearsay and are not admissible in evidence, and this is so whether the statements are oral or in writing. Prince v. Lowe, 263 Ala. 410, 82 So.2d 606; Clark v. Hudson, 265 Ala. 630, 93 So.2d 138; Smith v. Smith, 268 Ala. 348, 106 So.2d

260; Taylor v. Atlantic Coast Line R. Co., 232 Ala. 378, 168 So. 181; Hussey v. State, 87 Ala. 121, 6 So. 420." Mallory v. Mallory, 272 Ala. 464, 131 So.2d 703 (1961), supra.

See, also, Rosen v. Lawson, supra; Hornaday v. First Nat. Bank of Birmingham, supra; Alabama Great Southern R. Co. v. Arnold, supra; Blackman v. Johnson, 35 Ala. 252 (1860).

On the other hand, if *Brantley* is taken as establishing a "res gestae" exception to the general rule, then the exception is clearly not applicable to the instant case. In VI Wigmore on Evidence, § 1766, the res gestae exception is discussed at length. Nowhere in this discussion does Wigmore include within the res gestae exception a fact situation such as is presented by *Brantley* or in the instant case.

In the second place, in our judgment, the cases cited in support of the holding in *Brantley* do not, in fact, substantiate that holding. *Brantley* cites as authority 29 C.J., p. 284, and Rocci v. Massachusetts Accident Company, 226 Mass. 545, 116 N.E. 477 (1917). The text from Corpus Juris reads as follows:

"* * * In an action for benefits for sickness confining insured to his house, testimony of physicians that insured's condition required him to be removed to another house, and testimony of insured that he was ordered by his physician to move, is admissible to show an exigency for removal. * * *"

Footnote 6 cites the *Rocci* case as authority for this test. However, in *Rocci* the testimony of the patient was merely cumulative to testimony of the physician himself. There is nothing in the opinion to indicate that the patient's testimony was considered part of the "res gestae." The other authority cited in *Brantley* is Mutual Life Insurance Company v. Tillman, 84 Tex. 31, 19 S.W. 294 (1892). This case is not in point with, nor is it authority for, either the *Brantley* case or the case at bar. The *Tillman* case involves testimony by one doctor as to a dispute with another doctor, over their respective diagnoses. Further, the testimony in *Tillman* was elicited on cross-examination in an attempt to impeach the witness. In Prince v. Lowe, 263 Ala. 410, 82 So.2d 606, Mr. Justice Merrill concluded that this fact alone made *Tillman* inapt authority.

In the third place, we have examined the original record in *Brantley* and find that both Dr. Bass and Dr. Marsh testified by deposition in which their diagnoses were presented in substantially the same language as that subsequently testified to by the patient. Thus, the patient's testimony was cumulative.

In each decision which this court has rendered subsequent to *Brantley* (dealing with this question), *Brantley* has either been distinguished, or this court has refused to follow it, with one exception. That exception is Grammer v. State, 239 Ala. 633, 196 So. 268 (1940), which was specifically overruled by Prince v. Lowe, supra.

In Prince v. Lowe, supra, this court held that one physician may not testify as to the opinion or diagnosis of another physician expressed to the witness during consultation. In this case, Mr. Justice Merrill, writing for this court, discussed the *Brantley* case at length and analyzed the authorities cited therein. The *Brantley* case, he wrote:

"* * * is a relaxation of the general rule that a patient may not testify what his doctor told him in reference to his injuries. * * * But the case is not authority for the proposition that one doctor may testify what another doctor thought or said * * *."

In Taylor v. Atlantic Coast Line R. Co., supra, this court held there was no error in sustaining an objection to a question put to plaintiff as to what his doctor told him with reference to the condition of his knee. The court, in an opinion by Mr. Justice Bouldin, held:

"* * * [T]he unsworn opinion of a physician, like any other expert, is

mere hearsay. The proper method of proving the result of Dr. Edge's examination was to examine him as a witness. * * *"

Justice Bouldin goes on to distinguish the *Brantley* case as follows:

"* * * The court [in *Brantley*] held admissible statements and advice of physicians on which the insured acted as 'part of the res gestae of the examination that caused him to retire from business, make his claim against the defendant for disability, for which this suit was brought.'

"We would not extend the rule to include the unsworn opinion of a physician touching the extent of injury from accident, in the absence of circumstances rendering such opinion a matter proper to be considered as part of the case. This would open wide the door to hearsay evidence. * * *"

We therefore conclude that to whatever extent *Brantley* creates an exception to the hearsay rule, it cannot be said to stand for the proposition that a patient may testify in court as to statements made to him out-of-court by his doctor in order to show that he, the patient, was caused mental anguish as a result of such statements. To hold otherwise, as Justice Bouldin suggests in *Taylor*, supra, would "open wide the door to hearsay evidence," without the opportunity afforded to cross-examine the declarant.

We must decline to follow *Brantley* for the reasons we have discussed. We do think the decision of Alabama Great Southern R. Co. v. Arnold, supra, is sound and is apt authority for our holding in the instant case. We also decline to follow the out-of-state decisions to the contrary, cited to us by appellee, as we consider our decisions to state the sounder law.

■ One final matter remains to be disposed of. Appellee argues that admission of his testimony as to what Dr. Bunderant

told him is, at most, harmless error because it is merely cumulative.

Appellee divides his answer into five parts: (1) "Weakness in my right arm"; (2) "dead place on the inside of my arm"; (3) "stiffness in the neck"; (4) "nerve trouble in the roots of my back"; (5) "I wasn't physically able to do the work." He then contends, in brief (by way of illustration), that each part of the answer was testified to by other doctors. Thus, he concludes that the statements attributed to Dr. Bunderant were cumulative, and therefore harmless error.

We have carefully read the record with respect to each part of the testimony which appellee contends is cumulative. We have concluded that the testimony of the other physicians was for the most part, "subjective" while that of Dr. Bunderant was "objective." As the latter's hearsay statements were not related by any other witnesses, they were not cumulative. We can see no good reason to be served in setting out that part of the record which we consider supports our conclusion. Suffice it to say, that the statements attributed to Dr. Bunderant were not, in our judgment, cumulative.

There is an additional reason why the "harmless error" rule is inapplicable. The final statement attributed to Dr. Bunderant is that "just too many people's lives were involved." This would indicate that if appellee were permitted to return to work, in the doctor's opinion, other people's lives would be jeopardized. We find nothing in the record to indicate that any other witness testified to that effect. Clearly, this was not cumulative.

We must, therefore, conclude that there was reversible error in the trial court's overruling the appellant's objection to this testimony.

Reversed and remanded.

HEFLIN, C. J., and COLEMAN, HARWOOD and McCALL, JJ., concur.